### MARKS et al. v. NORTHERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1896.)

### No. 277.

1. APPEAL—TIME OF TAKING—ENTRY OF JUDGMENT.

The jury having returned a verdict for defendant by direction of the court, the plaintiffs procured the judge to sign a bill of exceptions, which, after reciting the fact, concluded, "Forasmuch as the facts aforesaid, and the decision of the court thereon, do not appear of record, plaintiffs pray that this, their bill of exceptions, may be allowed," etc. A formal judgment was entered on the verdict some months later, and a writ of error was sued out within six months thereafter; but defendant moved to dismiss the same in the appellate court on the ground that the words above quoted either implied that a judgment was at that time rendered, or that the words themselves constituted an entry of judgment. *Held,* that this contention was unfounded, and that the writ of error was sued out in time.

2. RAILROAD CONSTRUCTION CONTRACT—EXTRA WORK—AWARD OF ENGINEER—BAD FAITH.

Plaintiffs built for defendant company a certain line of railroad, under a contract that no extra labor or material was to be paid for, unless ordered by the company's engineer, who was constituted umpire to finally decide all questions which might arise. The contract reserved to the company the right to change the line and grade without affecting the price, but provided that the engineer was to fix the amount to be paid for any change materially affecting the cost, so as to do substantial justice. During the progress of the work, changes which did materially affect cost were made, which plaintiffs requested the engineer to estimate, but he did not until after plaintiffs had been paid the price of the original contract. Subsequently the umpire awarded $3,755.50 for extra work, but made a finding that the work had been delayed, to the company's damage of an equal sum, and that the one should offset the other. He refused to take any further action, or to hear the plaintiffs in regard to the reasons for delay, which they alleged were caused by the company, without their fault. *Held,* that the circumstances were such clear evidence of bad faith as to render the award void.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This was an action brought by J. R. Marks and others against the Northern Pacific Railroad Company. From a judgment in favor of defendant, plaintiffs bring error.

F. H. Graves, for plaintiffs in error.

W. O. Chapman, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The motion to dismiss the writ of error must be, and is, denied. The motion is based upon the ground that the writ was not sued out within the time limited by law, which is six months after the entry of the judgment sought to be reviewed. Act March 3, 1891, § 11 (26 Stat. 826–829). The record shows that the case came on for trial before the court below on the 25th day of April, 1894. A jury having been duly impaneled and sworn to try the issues of fact, the attorney for the plaintiffs made an opening statement of the facts he expected to prove and relied upon for a recovery, upon the conclusion of which, on motion of the defendant, the court below instructed the jury to return a verdict for the defendant, which was accordingly done on the same day. No judgment, however, on the verdict was entered until November 20, 1895, on which day, upon the motion of the plaintiffs in the case, a judgment upon the verdict rendered was signed by the judge, and entered of record. The writ of error was sued out and filed in the court below December 28, 1895,—within six months after the entry of the judgment. The day after the rendition of the verdict (that is to say, on the 26th of April, 1894), the plaintiffs below presented to the trial judge a bill of exceptions, setting forth the facts upon which they relied as entitling them to a recovery, immediately after which the bill of exceptions recites:

"Thereupon the defendant moved the court, upon said opening statement and the pleadings, to instruct the jury to find a verdict for the defendant, on the ground that the facts, if proven as stated, would not entitle the plaintiffs to recover; and, after argument by counsel for the plaintiffs and defendant, the court granted said motion, and instructed the jury accordingly, to which action of the court the plaintiffs duly excepted, and their exception was allowed. No testimony was offered in the case, because of the action of the court as aforesaid, and the making of the opening statement as hereinbefore set out was all that occurred in the trial of the case prior to the instruction given as aforesaid. Counsel for the plaintiffs made no objection to the court ruling on the facts contained in his said opening statement, instead of waiting to have the same developed by the evidence, but consented thereto; and forasmuch as the facts aforesaid, and the decision of the court thereon, do not appear of record, the plaintiffs pray that this, their bill of exceptions, may be allowed, which is now done, and the said bill of exceptions signed and sealed accordingly. April 26, 1894.                    C. H. Hanford, Judge."

This bill of exceptions was on the same day (April 26, 1894) filed with the clerk. And it is insisted on the part of the counsel for the defendant in error, as we understand them, that the use of the words in the bill of exceptions, "and forasmuch as the facts aforesaid, and the decision of the court thereon," signed by the judge, either imply that a judgment had been entered upon the verdict, or of themselves constitute such a judgment. We are unable to see anything in the

suggestion.    The use of the word "decision" in the recitation in the bill of exceptions evidently refers to the action of the court in its ruling upon the motion of the defendant in the case to instruct the jury to find a verdict for the defendant on the ground that the facts, if proven as stated, would not entitle the plaintiffs to recover; and the sole purpose of the bill was to present the facts and the ruling of the trial court, with the plaintiffs' exceptions thereto, in order that they might, if they elected to do so, have the court's ruling reviewed upon proper proceedings.    In no sense did the bill of exceptions, or any recitation in it, constitute the judgment which was to follow the verdict rendered by the jury.    Indeed, under the statute of the state of Washington, by which, in the trial in question, the circuit court was, by virtue of section 914 of the Revised Statutes of the United States, controlled, no judgment could be entered upon the verdict until five days after it was returned.    2 Hill's Ann. St. Wash. § 435.  The record shows that the only judgment ever entered upon the verdict was that signed by the judge, and filed November 20, 1895.  This is the judgment,—"the entry of the judgment,"—in the language of the supreme court in Polleys v. Improvement Co., 113 U. S. 83, 5 Sup. Ct. 369, and on that day the plaintiffs in error had a right to their writ, and on that day the six months began to run within which their right existed.

This brings us to the consideration of the merits of the case.    The action grew out of a certain contract in writing entered into October 30, 1891, between the firm of Thomas Olsen & Co. and the defendant railroad company for the building of a certain line of railroad.    The defendant company, desiring to shorten and improve the grade of certain parts of its road, established and marked out the line on the ground, and caused maps to be prepared showing the extent of the necessary cuts and fills, and their relation to each other.    For the building of the road in accordance with the line so established, marked, and indicated, the firm of Olsen & Co. (to all of whose interest in the premises the plaintiffs in error succeeded prior to the commencement of this action) and the defendant entered into a written contract, which is set out in the amended complaint, describing the work to be done, and fixing the prices at which the contractors were to be paid for doing it.    The contract contained these provisions, among others:

"The said parties of the first part further agree that no extra work or material is to be allowed or paid for, excepting only in performance of a previous order in writing of the said engineer, and that any 'and all claims for extra work or material must be presented to the engineer for allowance at the close of the month in which it shall have been done or finished, to be included in the estimate for that month; otherwise all claims therefor shall be deemed absolutely waived by the said parties of the first part, and the said party of the second part shall not be required to allow or pay for the same. * * * It is hereby mutually covenanted and agreed by and between the said parties hereto that to prevent disputes or misunderstandings between them in relation to any of the stipulations and provisions contained in this agreement, or the true intent and meaning thereof, or the matter or performance thereof by either of said parties, and for the speedy settlement of such as may occur, the chief engineer of the party of the second part shall be, and he hereby is, made and constituted the umpire to decide all such questions and matters. He shall also decide the amount and quality, character and kind, of work and ma-

terials performed and finished [furnished] by the said parties of the first part under this contract, including all extra work and material; and his decision shall be final, and shall be binding and conclusive, to all intents and purposes, and in all places, on the said parties hereto."

The contract concluded with the provision that:

"The said party of the second part expressly reserves the right, at any time, to change and alter, in whole or in part, as to it may seem expedient, the line and the grade of that portion of its railroad embraced in this contract, and it is hereby mutually covenanted and agreed by and between the said parties hereto that any change or alteration of the line or grade or bridges, or of all, shall not affect the prices herein specified; nor shall any bill for 'extras,' or other charge or claim, be made, allowed, or paid by reason thereof, or of any difference occasioned by any such change or alteration, in the quantity, locality, or nature of the work to be performed. But if, in any case, the chief engineer shall deem the change of line or alteration of grade to have materially affected the cost of doing the work, he shall fix and determine the price to be paid, either above or below, as the case may be, the prices hereinbefore provided to be paid for such work, so as to do substantial justice between the parties."

During the progress of the work the defendant company, by virtue of the provision last quoted, changed the line of the road in certain places, and the contractors built it in accordance with those changes. While the work was progressing the contractors claimed that the changes in the line materially increased the cost of construction, and requested the defendant's engineer to fix and determine the amount of such additional cost; concerning which, however, the engineer did not act up to the time of the completion of the work, nor until as hereinafter stated. When the work was finally finished, estimates were made by the chief engineer, and a statement of the amount due and unpaid therefor, in accordance with the prices fixed in the contract, was certified by him, and paid by the company to the contractors.

The facts, as they are made to appear in the opening statement made by the attorney for the plaintiffs to the jury impaneled to try the issues in the case, upon which the court below acted, must, as the case is presented, be accepted by us as true. From that statement it appears that what the plaintiffs were paid and received did not include their claim for the additional work caused by the change in the line of the road made by the defendant; that subsequently the engineer of the defendant made a written decision to the effect that the changes in the line of the road had materially affected the cost of doing the work, and awarding them therefor the lump sum of $3,755.50; that he then made a finding that the plaintiffs had delayed the completion of their contract for a considerable time beyond that limited therein, from which cause the defendant had suffered damage in the increased cost of engineering services and of train service, and that this damage amounted to as much as the amount awarded the plaintiffs for the additional work, and constituted an offset to the same; and, therefore, that the plaintiffs were not entitled to anything from the defendant. This decision the engineer made in writing, and sent to the plaintiffs, since which time he has refused to take any further action in the matter, although often requested by the plaintiffs to do so.

Counsel for the plaintiffs, in his opening statement, proposed to show by testimony that any delays in the completion of 'the contract by the plaintiffs was at the request of the engineers in charge of the work for the defendant, and for the defendant's accommodation; that no claim for, or intimation of, damages suffered by delay was made by the defendant to the plaintiffs prior to the award by the engineer; that the plaintiffs were given no notice of a purpose on the part of the engineer of the defendant to consider any question of damage to the defendant by reason of any delay; and that they were never heard by him on that subject. Assuming that, under the provisions of the contract, the defendant's engineer was empowered to consider any question of damages growing out of the matters specified in his findings, those damages were not limited, if they at all related, to the additional work caused by the changes in the line of the road. For nothing but the additional cost caused by those changes did the plaintiffs sue. Everything else due under the contract, the answer itself shows, was paid prior to the commencement of the action; for it is therein averred, among other things—

"That defendant, prior to the commencement of this action, to wit, between the 1st day of August and the 1st day of October, 1892, at Spokane, Wash., did make and deliver to plaintiffs their final estimate covering the work mentioned and referred to in the amended complaint herein, and did then pay to plaintiffs the sum of $18,696.91, and plaintiffs did then and there release defendant from all further claims and demands of plaintiffs, and did on said 30th day of August, 1892, and in consideration of such payment, assign, sell, transfer, and set over unto defendant the contract set forth in the amended complaint herein, and did, in consideration of such payment, further assign, sell, transfer, and set over to defendant all right, claim, or demand, of whatsoever kind or nature, which plaintiffs then had, or may have had, in or by said contract."

When that final estimate was made and delivered by the defendant to the plaintiffs, together with $18,696.91, no suggestion appears to have been made that the plaintiffs had damaged the defendant by any act or omission. Moreover, the statement of plaintiffs' counsel included an offer of testimony to show that any delays in the completion of the contract by the plaintiffs was at the request of the engineers in charge of the work for the defendant, and for the accommodation of the defendant, and that no claim or intimation of any damages suffered by delay had been made by the defendant to the plaintiffs, or to any other person, to their knowledge, prior to the action of the engineer in respect to the award, and that the plaintiffs were given no notice of a purpose on his part to consider any such question. Where damages are claimed as an offset to money otherwise found due a contractor, growing in whole or in part out of the alleged delay of the contractor in performing his contract, most obviously the contractor against whom the damages are asserted is entitled to show, if he can, that the delay was caused by the party claiming the damages. The constituting, by agreement of the parties, of the engineer of the defendant company the umpire to ascertain and determine the amounts that should be due the contractors under the contract,

and to decide all disputes and misunderstandings between the parties in relation to the provisions of the contract and their performance, was accompanied by the presumption of law that the engineer should at all times, and in respect to every matter submitted to his determination, exercise an honest judgment, and commit no such mistakes as, under all the circumstances, would imply bad faith. Railroad Co. v. March, 114 U. S. 549–554, 5 Sup. Ct. 1035. If it be conceded that the contract in question contemplated the consideration by the umpire of such damages as are specified in his findings, his fixing, without affording the contractors any opportunity to be heard upon the question, the amount of such damages so as to offset the value of the additional work performed by them, growing out of the changes in the line made by the defendant company, was, under the circumstances appearing, such gross error as to imply bad faith on his part; for the damages specified by him related, at least in part, if not wholly, to the subject of the main provisions of the contract, upon the performance of which he found and certified that the contractors were entitled to $18,-696.91, and against which he neither allowed nor suggested any damages in favor of the defendant company, and which sum of money the company paid without any such claim or suggestion. To offset the amount subsequently found by him to be due the contractors as additional costs growing out of the changes of line, by damages which, if sustained by the company, were sustained prior to that settlement and payment, without notice to the contractors of any such claim, or affording them an opportunity to be heard in respect to it, is, we think, very clear evidence of such gross error as to imply bad faith, and an award so made is void. Justice Story, speaking for the supreme court in Lutz v. Linthicum, 8 Pet. 178, said, "If the award was made without notice, it ought, upon the plainest principles of justice, to be set aside." The attempted offset to the amount found by the umpire to be due the contractors for the additional cost of the work incurred by the changes in the line of the road being invalid, the award in question must be held void in toto. Sergeant Williams, in his note upon the case of Pope v. Brett, 2 Saund. 292, says, "If, by the nullity of the award in any part, one of the parties cannot have the advantage intended him as a recompense or consideration for that which he is to do to the other, the award is void in the whole." "This just principle," observed Chief Justice Marshall, speaking for the supreme court in Lyle v. Rodgers, 5 Wheat. 394–409, "must always remain a part of the law of awards."

The case showing that the umpire refused, upon request of the plaintiffs in error, to take any further action in respect to the additional cost of the work in question, growing out of the changes in the line of the railroad, than that already taken by him, and that the defendant company refused to require him so to do, and the award shown by the record to have been made by the umpire being void, the judgment must be reversed, and the cause remanded for a new trial. Ordered accordingly.