### RITTENHOUSE et al. v. JOHNSON et al.

No. 20653. Opinion Filed Oct. 4, 1932.

Rehearing Denied Jan. 3, 1933.

Rittenhouse, Lee, Webster & Rittenhouse, and Clyde L. Andrews, for plaintiffs in error.

Geo. N. Otey and Erwin & Erwin, for defendant in error Roy M. Johnson.

E. A. Foster, for defendant in error C. Lincoln McGuire.

McNEILL, J. This action was instituted in the district court of Lincoln county, Okla., on August 23, 1920, by plaintiffs in error against defendants in error to recover $60,000 as damages for slander of title to certain lands in Carter county belonging to plaintiffs in error. The parties will be referred to as they appeared in the court below.

It appears that the defendant Charles Lincoln McGuire was the owner of the property in question prior to his marriage with Irene Frances McGuire; that they were divorced on October 23, 1919, by the district court of Lincoln county, and said Irene Frances McGuire was awarded the land in controversy as her permanent alimony free and clear of all incumbrances, liens, leases, mortgages, etc. Plaintiffs acquired their title to the premises in question by warranty deed on the day said divorce was granted. Plaintiffs charge in their petition that, on December 22, 1919, the defendants Roy Johnson and Charles iLncoln McGuire placed of record in the office of the county clerk of Carter county a pretended oil and gas lease, dated June 25, 1918, purporting to have been executed by Charles Lincoln McGuire and Irene Frances McGuire to Roy M. Johnson covering said premises. Plaintiffs further allege they had no notice,

knowledge, or information of the existence of said pretended lease and never learned of the existence of the same until after the same was placed of record; that said lease was void and that the same was placed of record in violation of a temporary restraining order and injunction issued in said divorce proceeding; that said defendants recorded said instrument with the intent of preventing plaintiffs from leasing said premises for oil and gas purposes, preventing plaintiffs from selling the oil and gas rights in said premises; that said defendants maliciously, knowingly, willfully, and wrongfully conspired together to slander the title of said plaintiffs; that by reason of the wrongful acts of the defendants, plaintiffs have suffered special damages in the sum of $60,000. Defendants denied the slandering of plaintiffs' title.

It appears that this and other litigation arose by reason of the said divorce proceeding. The district court of Lincoln county, on February 21, 1919, issued an injunction and restraining order against the defendant McGuire in said divorce suit from disposing, selling, or in any manner conveying said defendant's real or personal property located in Love, Murray, Garvin, and Carter counties. A citation was issued out of said court on June 5, 1920, for the arrest of said McGuire and Roy Johnson, requiring them to appear before said court to answer charges of contempt by reason of the filing of the leases in question. The matter came on for hearing on September 13, 1920. A jury was impaneled. After the evidence was introduced the court directed a verdict in favor of the defendant Roy Johnson, and submitted the matter of the guilt of the defendant McGuire to the jury. The jury found the defendant McGuire not guilty. Thereafter, on June 1, 1921, judgment was entered in the district court of Carter county canceling the oil and gas lease in question. An appeal from said judgment was thereafter lodged in this court, which was concluded in August, 1926, wherein this court canceled said oil and gas lease. On August 13, 1921, plaintiffs, in said district court of Lincoln county, filed an amended and substituted petition and the matter in controversy herein concerning the slandering of title did not come on for trial until January 2, 1929. The matter was submitted to the jury, and it rendered a verdict for the defendants. This was the second time that a jury in Lincoln county found in favor of the defendants in reference to the filing of the lease in question.

The plaintiffs contend that they were entitled to a directed verdict, and that the

court should have rendered a judgment for plaintiffs notwithstanding the verdict. They urge in support of this proposition that malice, which is the gist of their cause of action, is presumed.

The defendants offered evidence to the effect that the plaintiff F. A. Rittenhouse knew of the existence of these aforesaid leases prior to the receiving of his deed, and that he had been informed by the defendant McGuire of this fact; that their acts in reference to the recording of the leases were in good faith and were done without malice. The defendant McGuire testified that he believed the lease was a legal, valid, and subsisting lease, made and accepted in good faith. Malice is a question at issue in a suit to recover damages for slander of title. It is necessary for the plaintiffs to prove the publishing of the slanderous instrument and falsity thereof; that special damages have been sustained by reason thereof; possession of an estate or interest in property slandered; and that the acts of the defendants were malicious. Ward v. Mid-West Gulf Co., 97 Okla. 252, 223 P. 170.

Odgers, Libel & Slander (Eng. Ed. 1887, sec. 142) p. 109, uses this language:

"The law has been laid down by an eminent authority on this subject that it is not actionable for any man to assert his own rights at any time, and, though defendant may fail to prove such right, if, at the time he spoke, he supposed, in good faith, that he had such right, no liability is imposed; that it is not sufficient for a plaintiff to prove in such action absence of right in defendant; he must also offer evidence of express malice, and that defendant could not honestly have believed in existence of right on his part, or had no reasonable cause for such belief; and even then the jury are not bound to find malice, for a defendant, though acting stupidly, may have been prompted by innocent motive."

Disputed questions of issuable facts were presented to the jury and the jury found that plaintiffs were not entitled to recover. Such questions are for the determination of the jury, and where a cause is submitted to the jury under instructions which fairly cover the issues and properly embody the laws, the verdict of the jury will not be disturbed on appeal where there is any competent evidence reasonably tending to support the same. Chapman v. Carroll, 134 Okla. 65, 272 P. 850. Under this record, plaintiffs were not entitled to a directed verdict nor a judgment notwithstanding the verdict.

The plaintiffs also urge that the trial court committed error in not permitting said Irene Frances McGuire, the former wife of the defendant C. Lincoln McGuire, to testify in reference to the oil and gas lease in question, and contend that even though said testimony might be inadmissible as to the defendant McGuire, it was clearly admissible as against the defendant Roy M. Johnson. The offer as made by plaintiffs clearly contains incompetent matters. In the offer was a question of whether or not there were any unfilled blanks in the oil and gas lease which had been sent to her for execution; that the defendant C. Lincoln McGuire, her former husband, advised her that the lease had been done away with and destroyed; that she executed the lease in blank at his request for the purpose of immediate sale. The trial court is not required to separate the admissible from the inadmissible in a tender where an offer of proof is made, although it is within its discretion to do so. Such refusal, however, is not error. It may properly reject the whole. 38 Cyc. 1335; Juby v. Craddock (Mont.) 185 P. 771; De Atley v. Streit (Mont.) 263 P. 967; Moore v. School Dist. No. 23, Stephens Co., 94 Okla. 133, 221 P. 51, and Stickney v. Hughes (Wyo.) 75 P. 945.

To permit said former wife to testify to the facts set forth in said offer would be in violation of section 589, C. O. S. 1921 [O. S. 1931, sec. 272]. The defendants at no time urged, nor contend, that said Irene Frances McGuire said that she ever advised plaintiffs of said lease prior to the recording of same. Her evidence would have been cumulative. Plaintiffs testified on this question. Plaintiffs were not prejudiced in that regard.

We conclude that the trial court committed no error in sustaining the objection to said offer. Other assignments of error are urged, in reference to admitting incompetent, irrelevant, and immaterial testimony, in the giving of certain instructions and in refusing plaintiffs' requested instructions. We consider it unnecessary to discuss the same. We have examined the record and find no merit in such contentions.

Judgment affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON and SWINDALL, JJ., concur. KORNEGAY, J., specially concurring. RILEY, J., dissents. ANDREWS, J., disqualified.

KORNEGAY, J. (specially concurring). I concur in the conclusion of the majority that the verdict was sufficiently supported by the evidence, and that the plaintiffs in error were not entitled to a new trial. From the record it appears to me that the legal forum

for the trial of the action was the district court of Carter county, and it seems to me that the action should be dismissed, so that the plaintiffs in error may, if so advised, bring the action in the proper forum.

As disclosed by the pleadings in this case, the plaintiffs in error seek to recover $60,-000 damages from the defendants in error because the defendants in error placed on record in Carter county, in the office of the county clerk, an oil and gas lease purporting to have been executed on the 25th of June, 1918, by Charles Lincoln McGuire and Irene Frances McGuire, his wife, to Roy M. Johnson, covering certain lands in Carter county, none being in Lincoln county.

It was alleged that the placing on record was without right and malicious, and that the lease had no validity and was executed with the grantee's name being blank. It was further alleged that placing it on record was in violation of an injunction made by the district court of Lincoln county, set forth in exhibit "A" to the petition. This appears to be a decree of divorce entered on the 30th of October, 1919, in the district court of Lincoln county, wherein Irene Frances McGuire was the plaintiff and Charles Lincoln McGuire was the defendant.

The court, in the divorce case, found that of the property of the defendant, the plaintiff was entitled to certain lands, part being in Love county and part being in Carter county, and among other lands the lands here involved, which are alleged to have been sold to them and conveyed by Irene Frances McGuire after they were set aside to her in the divorce proceeding. The lands were subjected to the cost of the proceeding and the attorney's fees allowed F. A. Rittenhouse. There were mortgages upon these lands and other lands, and the transfer was made subject to the proportionate part of these mortgages, and also subject to taxes. It was further provided that the decree of divorce should not become final until the end of six months. Notice of appeal was then given in open court, according to the record, and time was taken to make a case for the Supreme Court, and supersedeas bond was fixed at $2,500. The decree on its face appeared to divest C. L. McGuire of all interest in the land. There does not appear to be in this decree, that is relied upon, any injunctive order.

The oil and gas lease relied upon is set out as being a part of exhibit "A", and covers the southeast 10 acres and the north 20.37 acres of lot 1, and the northeast 10.23 acres of lot 2, and the east half of the southeast quarter of the northeast quarter, and the east half of the northeast quarter of the southeast quarter, all of section 5, township 4 south, range 2 west, and contains 80.6 acres, more or less. It appears to have been acknowledged on the 29th of June, 1918, by Irene Frances McGuire in Warren county, Ky., and was filed for record on the 22nd of December, 1919, at 2 o'clock, p. m., and recorded in the office of the county clerk of Carter county.

The deed from Irene Frances McGuire Phalan, described as a widow, to F. A. Rittenhouse, for an undivided one-half interest in this and other lands, dated the 31st of October, 1919, is set out as a part of exhibit "A". That was acknowledged in Lincoln county, Okla., on the 31st of October, 1919, and filed for record on the 11th of November, 1919, in Carter county. It was averred that the recording of this oil and gas lease was a publishing of the matters contained therein, and its purpose was to inform all persons who might want to buy the land, or take an oil and gas lease on it, of the statements contained in it, and an assertion that Roy M. Johnson was, in truth and in fact, the lawful and rightful owner of the oil and gas mining rights. It was further averred that the publication was malicious and false. The allegations of damages were as follows:

"That by reason of the wrongful acts of the defendants aforementioned, and the slander and defamatory words and statements with reference to plaintiffs' title and rights in said premises, so published as aforesaid, and as the direct result and consequence therefor, plaintiffs suffered and sustained the special damages hereinafter mentioned, that their rights and title in said real estate was clouded, slandered, and defamed, and they were thereby prevented from selling or disposing of oil and gas mining privileges and from leasing said premises for oil and gas, and that thereby such valuable rights of the plaintiffs were rendered worthless and of no value, and plaintiffs injured and damaged in their said rights and property, all as was intended by the defendants when they placed and caused to be placed of record their said oil and gas lease and thereby published and caused to be published the said slanderous words and defamatory statements, and imputations of and with reference to plaintiffs' said title and rights in said premises, as contained and set forth in said warranty deeds above-mentioned."

The petition then proceeds to set out two "offers" made to the plaintiffs to buy the

right to extract the oil and gas, one being for $750 an acre and the other for $500 an acre. There was a prayer for $60,000 damages.

It appears to be conceded that Roy M. Johnson resides in Carter county and was served with summons there. It further appears to be conceded that his codefendant, McGuire, lived in Oklahoma county, and originally both defendants were sued in Oklahoma county, but while attending on court in Lincoln county to answer a citation in contempt of the district court of Lincoln county, defendant McGuire was served with a summons in this suit.

Special appearances were made by both of the parties defendant, claiming no jurisdiction in the court to entertain the action. McGuire claimed that he lived in Oklahoma county, and that the summons was served on him in Lincoln county when he was in attendance pursuant to an order of the court and while he was engaged in going to and returning from the court, and he claimed personal privilege. This was overruled and he took his exceptions. Roy M. Johnson moved to quash the summons and service and it was overruled.

A demurrer was filed for McGuire because the petition did not state facts sufficient to constitute a cause of action, and a demurrer was filed by Roy M. Johnson for the lack of jurisdiction and lack of facts and misjoinder of parties defendant. These were overruled and exceptions taken.

Roy M. Johnson filed an answer to the petition, specially insisting upon the want of jurisdiction, and denying generally the allegations, and averring the lack of malice. McGuire filed an answer still claiming the lack of jurisdiction, and declaring that plaintiffs had resorted to a ruse to get him into Lincoln county to serve the summons, and that while he was there answering the contempt action, he was served with summons. He denied the allegations of the petition as to the merits. He also set up the fact that on the 25th of July, 1921, a general demurrer was sustained to the original petition, and claimed a departure, and set up the one-year statute of limitations as against the cause of action set up in the second petition. A similar defense was set up by Johnson. There were several more allegations in the way of denials in the respective answers, but it is not deemed necessary to recite them.

The proceedings in the contempt matter are attached to the various pleadings, resulting in a discharge by court order of Johnson, and a discharge after a jury trial of McGuire as not being guilty of contempt. The contempt verdict of the jury was by nine members that were duly polled. This alleged contempt was predicated on the placing of the oil and gas lease of record after title had passed to plaintiffs in error by conveyance executed by the former wife of defendant McGuire.

A very lengthy trial of the present case was had, in which the "offers" were detailed for the bonus on the oil and gas lease, and a good deal of testimony was taken as to the circumstances attending upon the recording of the lease and its procuring. A great many witnesses testified as to the value of the land, most of which value, however, was based on its value for oil purposes. The witnesses varied considerably. Most of the defendants' witnesses deposed that $50 would have been an unreasonabe price for the oil lease, and the parties resorted to the procedure of introducing the witnesses to depose that one of the persons offering to buy the lease was not worthy of belief, followed by about the same number of witnesses claiming that his reputation was all right, and testimony was introduced with reference to the insolvency of both of the offers, and also the records relied upon were introduced in evidence, resulting in a charge by the court to the jury and a verdict returned by eleven members of the jury in favor of the defendants below, the present defendants in error.

Lengthy briefs were filed upon the merits of the case by both sides. The defendants in error in their brief on the threshold insist that, while the court below found in their favor, it did not have jurisdiction of the case, and cite several authorities to that effect. Apparently, there is no cross-appeal here, and frequently that would be a good answer to a complaint, but in this case it goes to the jurisdiction, not only of the person, but of the subject-matter.

If this were a purely personal action, the district court of Lincoln county could probably have gotten jurisdiction of the person, both of McGuire and of Johnson, by serving them, perhaps one of them, in Lincoln county. The only one that was there served claims to have been there in attendance on court pursuant to process, and that undue advantage was taken of him by dismissing the action brought in Oklahoma county, where he lived, and bringing a new action in Lincoln county. As to Johnson, the rec-

ord does not show that he was ever served with summons in Lincoln county. But the objection as to venue goes further than that. It concerns the subject-matter of the action. It is very clear that the damages sought here were damages arising out of creating a cloud on plaintiffs' title arising from recording an instrument in Carter county, where defendant Johnson resided and where the land lay. The whole case is based on real estate injury. The act relied upon, namely the recording of the lease in Carter county, is alleged to have resulted in an injury to the value of the land. The statutes appear to me to be conclusive to the effect that the district court of Lincoln county did not have jurisdiction of the person or of the thing. Article 4, ch. 3, C. O. S. 1921, defines the venue of actions. Section 199, C. O. S. 1921 [O. S. 1931, sec. 109] reads as follows:

"199. Actions brought where subject located. Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section:

"First. For the recovery of real property, or of any estate, or interest therein, or the determination in any form of any such right or interest.

"Second. For the partition of real property.

"Third. For the sale of real property under a mortgage, lien, or other incumbrance or charge.

"Fourth. To quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of, or to enforce or set aside an agreement to convey real property."

It appears from the record that an action to quiet title was brought with reference to this land in Carter county to invalidate by judicial decree the oil lease which had been recorded by Johnson at the instance of McGuire, who had transferred the lease on April 30, 1920. This action was brought in Carter county against the parties claiming the right to prospect the land for oil and gas under the assigned lease. Later the suit for damages for clouding the title was brought in Oklahoma county, and on discovering McGuire's prospective presence in Lincoln county, was dismissed in Oklahoma county and filed in Lincoln county, and service is had upon one of the parties while attending court to answer for contempt, according to the showing here made, and on the other party, who resided in Carter county, where all the records were, concerning the title of the land, and where the witnesses who knew of its value could ordinarily be found. This section is found in the Revised Laws of 1910 as section 4671.

Under the territorial regime, real estate actions were brought in the county of the residence of the defendant. The territorial Legislature, in an effort to get away from the inconveniences arising from suing with reference to real estate in the county of the residence of the defendant, passed a law similar to ours, but the territorial Supreme Court held that the legislative act was in violation of the Organic Act. However, as soon as the Legislature of the state began to function, it made radical changes in the statutes of Oklahoma on the subject of suits affecting real estate. By Senate Bill No. 273, found at page 590, under the head of "Procedure," chapter 68, Session Laws of 1907-08, the section above quoted was enacted. Another section of the act, section 200, C. O. S. 1921 [O. S. 1931, sec. 110] on the subject of real property being located in two or more counties, was enacted at the same time. There seems to be one exception with reference to bringing suit concerning real estate that has continued, which is for specific performance.

Some cases are cited in the brief of the defendants in error upon the subject, and insistence is made that though the verdict generally went for the defendants in error in this case, the case should be dismissed for the lack of jurisdiction. It appears to me that the position is well taken in this case.

A reply brief has been filed in which attention is called to an amendment to the case-made, showing the proceedings with reference to the motion to quash service, and citing some authorities upon the proposition. It appears therefrom that an action was brought pertaining to this matter in Oklahoma county, where McGuire lived, and that one of the plaintiffs in this case, on the 23rd of August, 1920, rode up in the bus from the depot at Chandler with McGuire, and that he ascertained that court was not in session. He prepared the petition filed in this case, phoned to Oklahoma City and had the case there dismissed, and the reason he got service on McGuire in Lincoln county was because he knew that there was no court in session and he got service on the 23rd. He admitted that he saw McGuire in the clerk's office and that he proceeded in the manner he did because he had rather have the suit in Lincoln county than in Oklahoma county, and that he worked very fast that morning.

It is very evident from an examination of the record that the plaintiffs below made extraordinary efforts to locate the scene of battle in a friendly forum, notwithstanding the provisions of our statute making it imperative that an action of this kind must be brought in the county where the land lies. In some respects our statute is similar to the Kansas statute. That statute, however, instead of using the word "must," uses the word "may," as is disclosed by a reference to Hill v. M. Pac. Ry. Co., 146 P. 351, decided by the Supreme Court of Kansas on February 6, 1915. Our own statute, in view of its history, ought to be controlling here, and in view of the exposition that is set out in the cases cited in the briefs, among others Mason v. Warner, 31 Mo. 509, and Livingston v. Jefferson, 15 Fed. Cases 661.

In the case of Brown v. Irwin, 27 P. 184, decided by the Supreme Court of Kansas on the 9th of July, 1891, the court decided that the action of trespass to real estate was a local action, citing among authorities Cooley on Torts, pages 471, 472. It went further and held that the Kansas court could not take jurisdiction of such an action where the injury occurred in another state. In Duncan v. Yordy, 27 Kan. 348, the statement is made that the action, being for unlawful entering of real estate and destroying growing crops thereon, could be brought in the county in which the defendant resided or may be summoned. There appears to be no discussion of the matter either way.

Apparently, to obviate the inconvenience from the territorial rule, the statute that we have was enacted by the Legislature of 1907-08. Under section 2, ch. 1, O. S. 1931, it is provided that the common law, as modified by constitutional and statutory law, is in force in Oklahoma. The Organic Law provided for suing in real estate actions in the county where the defendant resided, and in the case of Burke v. Malaby and Gossnel, 14 Okla. 650, 78 P. 105, the Supreme Court declared the Organic Law to be in conflict with the statute, and in Mouldin v. Rice, 10 Okla. 589, 91 P. 1032, the doctrine was reaffirmed.

In view of the fact that the subject-matter of the action here involved was land located in Carter county, and injury thereto by recording an instrument affecting it, it appears to me that Carter county was the proper forum for the adjudication of this matter, and that judgment should be entered directing the lower court to dismiss the action for want of jurisdiction.

Note.—See under (1) 17 R. C. L. 454 et seq.; R. C. L. Perm. Supp. p. 4290, 4291. (3) annotation in 12 L. R. A. 557; 26 R. C. L. 1032; R. C. L. Perm. Supp. p. 5832.