## CITY OF LAWTON v. SHERMAN MACHINE & IRON WORKS.

No. 26631. March 15, 1938.

Chas. E. Bledsoe, Lawton Burton, John F. Thomas, and Frank M. Bailey, for plaintiff in error.

Tomerlin, Chandler & Shelton, Richard W. Fowler, and Richardson &· Cline, for defendant in error.

WELCH, J. This is an appeal from the district court of Comanche county upon two cases consolidated therein and tried to the court. Plaintiff recovered judgment upon allegations of balances due it under construction contracts, and the defendant city has perfected the appeal. We will refer to the parties as plaintiff and defendant, as they appeared in the trial court.

In March, 1930, the defendant city voted bonds in the sum of $600,000 for waterworks improvements. Thereafter plaintiff contracted with defendant under three separate contracts made under three separate bids to construct such improvements. Contract No. 1 was for the furnishing of materials and construction of a 24-inch supply main from the defendant's filtration plant to the Fort Sill area, and a 16-inch line in and about such areas. Such contract was entered into in January, 1931.

Under contract No. 2 a 24-inch pipe line running from what is known as station 300 to the city of Lawton was constructed, two old pipe lines being taken up and the pipe relaid at various points, and certain improvements and extensions to the existing distribution system within the city of Lawton were·made. Such contract was made on January 17, 1931.

Under contract No. 3 à new filtration plant was constructed. Such contract was made on May 15, 1931. The first contract had been completed and the work accepted and paid for.

Plaintiff brought suit on contract No. 2, alleging a balance due thereunder of $22,404.43, being the difference between $164,008.62, the alleged total amount payable under the contract, and the total payments of $141,604.19.

Plaintiff also brought separate suit on contract No. 3, alleging a balance due thereunder of $16,729.68, same being the difference between $141,311.09, the alleged total amount due under the contract, and the total payments of $124,581.41.

The defendant answered in both of the cases, denying generally, and specifically alleging inferior workmanship, materials, etc.. and denying that the plaintiff had performed in accordance with the contracts, and alleging fraud upon the part of two of its engineers. The cases were consolidated for trial, and shortly before trial the defendant, by amendment, and over plaintiff's objections duly saved, alleged as a counterclaim certain alleged overpayments and damages arising from various alleged details under contract No. 1. A jury was waived and the cause tried to the court, resulting in a judgment in favor of plaintiff substantially, as prayed.

One of the questions for us to determine is whether the defendant may properly

plead matters relating to contract No. 1 as a counterclaim in the present cause. The defendant urges that the point is controlled by the case of Donaldson & Yahn v. Benight, 105 Okla. 108, 232 P. 116, wherein this court treated several projects as constituting one contract involving the extension of the waterworks system for the city of Perry. It appears to be the settled law of this jurisdiction that the demands of a counterclaim may not be asserted where they arise wholly out of a separate contract (Allison v. Shinner, 7 Okla. 272, 54 P. 471; Harris v. Warren-Smith Hdw. Co., 44 Okla. 477, 144 P. 1050; Haffner v. First National Bank of Seiling, 152 Okla. 169, 5 P.2d 351, and Gooldy v. Klein Iron & Foundry Co., 170 Okla. 466, 40 P.2d 1070) ; and that rule was recognized in the Benight Case, supra, but in that case all the parties had treated the projects or contracts as one contract. Observe the following statement of the court therein:

"Benight treats the three contracts as one contract for the construction work in his action to recover on the assignment. He treats the assignment as one cause of action against the city. It appears that all parties treated the contracts as one contract in doing the construction work, as it related to the completion of a single project"

—which, together with other facts, justified this court in treating the contracts there as one.

We do not find that the parties here treated the three contracts as one. They were each bid upon and executed separately and at different times; the work appears to have progressed separately, and all the parties at all times appear to have treated them as entirely separate contracts. The work on contract No. 1 was performed and accepted by the city and paid for in full without reserving any of the amounts due as provided therein. The plaintiff brought separate suits upon each of contracts Nos. 2 and 3.

We do not consider the mere fact that the contracting parties are the same, and that the contracts each related to waterworks projects, sufficient to justify the legal conclusion that the counterclaim herein pleaded arose out of the same contract upon which plaintiff's actions are based. We therefore conclude that the trial court should have excluded from consideration any evidence pertaining to contract No. 1, and we shall not give the same consideration herein.

The record and briefs are lengthy, and we will endeavor to consider the questions as nearly as possible in the order presented by the defendant's brief, omitting, however, any discussion concerning contract No. 1. It is said that the trial court made no distinction in its finding of fact between apparent and latent defects. Our attention is called to National Surety Co. v. Board of Education of City of Hugo, 62 Okla. 259, 162 P. 1108. It is further suggested that it is apparent from the findings of fact that the trial court considered the final certificate of the engineer as binding, in the absence of a showing of "absolute fraud." The defendant urges the following quotations as stating the applicable law relative to the reports of engineers, and this the plaintiff does not dispute.

"There can be no doubt that notwithstanding the fact that a contract makes the certificate, report, opinion, or decision of an engineer or architect conclusive on the parties, the law writes into this provision that the conduct of the engineer or architect must be free from fraud. Fraud on his part destroys the effect of the provisions. Therefore, if the engineer or architect fails to exercise his honest judgment, or makes such gross mistake as implies bad faith, his decision, report, certificate, or opinion may be impeached." Vol. 6 R. C. L. par. 341.

And in Ilse v. Aetna Indemnity Co. (Wash.) 104 P. 787:

"It is urged by the plaintiff that the certificate of the architect must be deemed to be conclusive of the amount due the plaintiff, inasmuch as the contract expressly states that the certificate of the architects shall be conclusive between the parties. It is the general rule of law that parties to building contracts may agree that the certificate of an architect or an award by an arbitrator shall be a condition precedent to the right of action or conclusive as to the amount due on the contract. This rule is not without its exceptions. It has accordingly been held that the certificate or award must be made upon such knowledge of the subject matter as to warrant an opinion binding upon the parties. This principle finds expression in the cases of Van Hook v. Burns, 10 Wash. 22, 38 P. 763; McDonald v. Lewis, 18 Wash. 300, 51 P. 387; Long v. Pierce County, 22 Wash. 354, 61 P. 142. This is consistent with the rule that a certificate may be impeached for fraud or for such gross mistake or error as would imply bad faith. To make a certificate without a proper knowledge of the fact which upon investigation is found to be untrue is equivalent in law to the making of a certificate known to be false. The result is the same. The one is an open fraud, the other the product of such bad faith as to operate as a fraud in law. In Marks v. N. P. Ry. Co., 76 Fed. 941, 22 C. C. A. 630, the court said:

" 'The constituting by agreement of par-

ties of the engineer of the defendant company the umpire to ascertain and determine the amounts that should be due the contractors under the contract * * * was accompanied by the presumption of law that the engineer should at all times, and in respect to every matter submitted to his determination, exercise an honest judgment and commit no such mistake as, under all the circumstances, would imply bad faith.'

"There has been much loose expression on the part of courts upon this subject, and many of them have seemingly held that the certificate once given cannot be questioned."

In Mallory v. City of Olympia, 134 P. 915, the Supreme Court of Washington said:

"Where under a contract disputes, estimates and final certificates are to be finally determined by the engineer in charge of the work, his decision is final in the absence of fraud, collusion, mistake, caprice, arbitrariness or other like invalidating features."

In Guild v. Andrews (8 Cir.) 137 Fed. 369, it is said:

"A stipulation in a contract * * * making an engineer * * * the arbiter of the amount and character of the work done, * * * is valid and obligatory upon the parties, and * * * is final and conclusive in the absence of fraud or such gross mistake as implies bad faith or the failure to exercise an honest judgment. * * *

"The contention is made that, to be efficient to destroy the final and conclusive character of the arbiter's action, gross mistakes must be such as not only to imply, but to necessarily imply, bad faith. The distinction is ideal rather than practical. * * * Good faith, which is presumed in the absence of clear and convincing evidence to the contrary, renders the action of the arbiter final and conclusive. Bad faith renders it of no effect. Gross mistakes imply bad faith only when, all the circumstances duly considered, they cannot be reconciled with good faith, and then they not only imply, but necessarily imply, bad faith."

In Ferguson v. Christensen (Colo.) 147 P. 352, the court said:

"To prevent fraud, injustice and oppression, the courts have universally held, where such a contract was involved, that it is competent for either party to allege and prove, for the purpose of avoiding the certificate, that the architect did not exercise an honest judgment, or that he acted arbitrarily, capriciously, and in bad faith. * * * All payments under the contract were due when certificates for the same were issued, but the final payment was not due until 35 days after the completion of the work. * * * It was given 2 days before the completion. * * * It may be, as contended, that payment on it was simply suspended until 35 days after the completion of the work; but, in considering the good faith of the architect, the time when and circumstances under which it was given would be competent to go to the jury to be considered by them in connection with all the evidence."

We are also mindful of the rule stated in the Hugo Case, supra, to the effect that the engineer's report is not final where the defects are latent.

We quote a portion of the trial court's findings contained in the journal entry of the present case, as follows:

"Now on this 22nd day of February, A. D. 1935, the court finds that the allegations of the supplemental and amended answers of defendant have not been sustained, and from the evidence the court finds that no fraud has been proven as against either former city engineer, Fred Cobb, nor former city engineer, F. E. Lawrence; and the court finds from the evidence that each of said parties in superintending the work involved in said controversy, as the agent of the city of Lawton, acted according to their respective best judgments in good faith, and are not guilty of gross irregularities or mistakes, such as to constitute bad faith; and the court further finds that their estimates as made were made in honest judgment and good faith and are binding and conclusive as to the matters set forth therein.

"The court further finds that in respect to the filtration plant known and designated as contract No. 3, in this cause, that the final estimate of Frank English, city engineer, in charge of said work at its completion, is not challenged and under the contracts is final and conclusive.

"And the court further finds that in respect to the disputes and dissensions as to the matters involved in this controversy, after same arose, the city of Lawton employed a competent engineer, John Rightmire, to consider the work done and performed and the payments made thereon, and whether the work as done and performed was substantially as provided by the contract, and whether the payments together with the estimates for payments not made were in substantial accordance with the terms and provisions of the contract; and that the said Rightmire carefully inspected all records available, personally inspected the work and secured information from all available sources concerning same to him known, and in writing to said city approved the work as having been done in substantial accordance with said contract, and made his estimates in writing of the amounts due the contractor in substantial accord with that of the said former Engineers Fred Cobb and F. E. Lawrence."

We think it is apparent from the above

quoted findings, as well as other findings contained in the record, that the trial court applied the law as given us by the defendant, and as above noted, and under the facts before it, held that no actual or constructive fraud was proven as to the engineers who were charged with fraud.

The court's findings in the last above quoted paragraph are sufficient to indicate that the court gave consideration to the latent defect rule as stated in the Hugo Case, supra, and that it considered the testimony of Engineer Rightmire sufficient to support the view that there were no defects of consequence, either apparent or latent, and that the contracts had been properly performed.

As to the suggestion that the findings of fact are deficient or obscure as to whether there were latent defects, it seems only necessary to remark that such question appears to have been given little prominence either in the pleadings or the evidence, and the defendant did not request any further findings in that connection. In the absence of such request, the general findings are sufficient and are equivalent to a specific finding in plaintiff's favor in that regard. Harn v. Interstate Bldg. & Loan Co., 77 Okla. 265, 188 P. 343.

It remains for us to determine whether or not the court's findings and judgment are supported by competent evidence. See First National Bank of Pocasset v. Melton & Holmes, 156 Okla. 63, 9 P.2d 703, wherein we held in paragraph 5 of the syllabus as follows:

"Where an action at law is tried by the court without a jury, the appellate court is precluded from weighing the evidence for the purpose of determining whether or not the court's findings were justified thereby, unless there was no evidence whatever to support the findings."

See, also, Myers v. Denison, 104 Okla. 208, 230 P. 742, and Western Chemical Co. v. Board of Com'rs of Pottawatomie County, 170 Okla. 337, 44 P.2d 825.

The engineer's reports are to be considered as final in this case, in the absence of such fraud as will invalidate them, or the presence of latent defects, and as no attack on the grounds of such fraud is directed at English, the court's finding and conclusions that the English report is conclusive is supported by the evidence. Mr. English's final certificate of approval of the work done under contract 3 is contained in the record, and the testimony of Mr. English and Mr. Rightmire indicates that there were no latent defects in the work thereby approved.

Referring to the findings that no fraud or gross mistakes had been proven as to the other engineers, and to the effect that no latent defective work and materials had been proven, we have referred to the record as a whole, and particularly to the evidence given by Mr. Rightmire, a competent engineer employed by the city after the entire work under all the contracts had been completed. Mr. Rightmire spent several months in collaboration with an auditor, also so employed, in investigating the entire matter in detail. He reported to the city and testified in detail at the trial, to the general effect that all of the work and materials furnished were in substantial compliance with the contracts. Although there was some conflicting testimony given at the trial, we consider the findings of the trial court sustained by the evidence.

We have examined defendant's assignments of error in the matter of the court's rejection of evidence offered, and are satisfied that the trial court was very liberal in the acceptance of testimony, and such of same as was rejected would, in our opinion, not likely have resulted in changing the findings of the court under the applicable law in this case. The offers in most instances included some incompetent evidence, and under the state of this record the court was not required to separate the incompetent from the competent. Rittenhouse v. Johnson, 161 Okla. 169, 17 P.2d 457. We find no prejudicial error in that regard.

It is urged by the defendant that an allowance to plaintiff of an item of $3,748.80 for excavating a certain ditch for the laying of a pipe line under contract No. 2 was error of law by the trial court.

This contract specifically provided for the removal of an old line and laying in the same excavation a new line. When the work had progressed to the point of removal of the old line the city engineers, the mayor, and perhaps two or three councilmen, and some persons referred to as members of the water committee, requested the contractor to leave the old line intact until the new line was laid. This necessitated the excavation of a new ditch for the new line, instead of placing it in the ditch from which the old line was to be removed, as provided by the terms of the contract.

The contract contained the following provisions:

"City acting through proper officers, may set out and any time before the work is finally completed order extra work done or make change in the portion of the work, as they may see fit, which additions and

changes shall be ordered by resolution and written notice of such action shall be furnished to the contractor by the city clerk. * * *"

And:

"To prevent all disputes and litigations, it is further agreed by the parties hereto that the city engineer shall, in all cases, determine the amount and quality of the work of the several kinds of work which is to be paid for under the terms of this contract; and he shall decide all questions which may arise relative to the execution of the contract, on the part of the contractors; and his estimates and conclusions shall be final and conclusive."

The pertinent findings of facts on the point which are fully supported by the evidence are as follows:

"The next question that looks a little serious to me is the charge for that excavation. I have no evidence before me that the city council was cognizant of it in the least, that there had been a change made in that excavation to lay the new pipe line. The court finds from the evidence adduced that there was a contract entered into between the city and the contractor, Mr. Sherman, providing that a certain line in which there was a water main, that the water main should be taken from that place and another larger one placed therein. In the evidence of Mr. Sherman he testified that prior to making an exchange of these water pipes that the mayor and certain members of the council, I do not recall the number, maybe two or three, something like that, and the city engineer came to him and told him that there was a school of fire going on at the great military post nearby and that it was desired and he was requested to dig another ditch and lay that 24-inch pipe line. I believe he stated that the mayor and engineer wished this done, * * * and acting thereon the contractor dug another ditch and did not use the old ditch. Now, the contract provides that where certain changes were to be made, that they could only be made upon the written consent of the council. * * *"

The trial court concluded, as a matter of law, that the plaintiff was entitled to the allowance of this item under authority of Oklahoma City v. Derr. 109 Okla. 192. 235 P. 218. The plaintiff here offers that decision, as well as Maney v. Oklahoma City. 150 Okla. 77. 300 P. 642, as supporting the conclusion of the trial court in that regard.

While it is true that this court, as well as courts generally, appear to have adopted the theory of construing contracts of this nature liberally, to the end that the same may be flexible enough to allow for minor changes, additions, extra work, etc., and to allow for conditions which could not have been foreseen by the contracting parties, and it seems that the authority of municipalities to incorporate in such contracts a delegation of authority to an engineer and other persons to order extra work or minor changes, has frequently been upheld or acquiesced in, we observe, however, that such authority has usually related only to minor changes or extra work, where such changes, etc., may be said to be a portion of the contract itself and reasonably contemplated thereby from the very nature of the work to be performed under the terms thereof. We do not understand that this court, or other courts generally, have held that such changes may be so made which amount to a complete departure from the contract itself.

In the contract here there is no language which purports to authorize the city engineer to change the contract so as to accomplish something not intended to be accomplished by its terms. The authority given the engineer is to "determine the amount and quantity of the work of the several kinds of work which is to be paid for" **under the terms of the contract.** It cannot be said that this extra or entirely new ditch was even remotely or incidentally included in the terms of the contract, and the fact that the city engineer requested that such work be done is not sufficient to charge the city with the cost of the same under the contract.

The contract provided that the "city acting through proper officials * * * may * * * order extra work done, or make change * * * which * * * shall be ordered by resolution, and written notice of such action shall be furnished by the contractor by the city clerk."

It is not contended by the plaintiff that this provision of the contract was complied with. Indeed, the evidence shows that no effort or pretense was made to comply therewith.

It is true that several city officials requested the excavation of the new ditch, and it is contended by the plaintiff that such action constituted a waiver of the contract provisions under discussion. There is much said in the briefs and authorities given on the question of waiver of contract provisions. As we understand the authorities, a party to the contract must act or fail to act when he should, to constitute a waiver. The city of Lawton was one of the parties to the present contract. We do not need to give authorities for the assertion that the city could act only through its

council. The council did not act at the time of the discussion of the matter with plaintiff, nor has it acted since to approve or confirm the same. The governing body of the city expressly incorporated in this contract a provision that no changes should be made in same without its approval. It cannot be said that such body waived such contract provisions when it had no official information that a change was sought to be made by certain unauthorized persons.

In the Derr Case, supra, the contract provided the city or engineers might give consent to the change, and it was sought to defeat the claim largely because the consent was not given in writing. In this case the contract provided that the city by resolution, etc., might consent. Under the contract the engineer was not given authority to give consent or to change the contract in any way. Here it is not a question of the manner of the giving consent, but is whether the only parties thereto who might give consent had done so in fact, or had acted in any manner to waive the contract provision, or to change the terms of the contract itself.

It may also be said that in the Derr Case, as well as in the Maney Case, supra, the so-called changes or extra work done therein were such as to have been reasonably contemplated and included in the contracts.

We therefore conclude that the trial court erred as a matter of law in rendering judgment for the item last hereinabove discussed.

The defendant further complains that the court erred in charging it with a portion of certain supplies left on hand after plaintiff was required to cease work under contract No. 2. It appears that the supplies were furnished for defendant's use under the terms of the contract. The said materials and supplies would have been employed in fulfillment of the contract provisions had the work not been suspended by the defendant. We think under the circumstances the supplies and material should be considered as the property of the defendant. The court required the defendant to accept and pay for only a portion of the same, and therefore the defendant cannot be heard to complain. We find no error in that regard.

The judgment of the trial court is affirmed, except as to the item of $3,748.80, for excavating the new ditch for the pipe line laid under contract No. 2, and in that respect the judgment is hereby vacated.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, CORN, GIBSON, and DAVISON, JJ., concur. RILEY, J., not participating. HURST, J., absent.