WESTERN FARMERS ELECTRIC COOP.,
a corporation, Plaintiff in Error,

v.

CONDENSER SERVICE & ENGINEERING
CO., a Corporation, Defendant in
Error.

No. 37911.

Supreme Court of Oklahoma.
Dec. 16, 1958.
Rehearing Denied Jan. 6, 1959.

Sam L. Wilhite, Anadarko, for defendant in error.

BLACKBIRD, Justice.

E. E. Farrow Company, hereinafter referred to as plaintiff, brought this action against Western Farmers Electric Cooperative and Condenser Service and Engineering Company to recover the sum of $2,473.-47, for work it performed on two condensers installed in an electric plant constructed for the Cooperative. By cross petition, Western Farmers Electric Cooperative, hereinafter referred to merely as "Western", sought judgment over and against Condenser Service and Engineering Company in the event Western was adjudged indebted to plaintiff. Judgment was entered for plaintiff against Western and sustaining a demurrer to plaintiff's evidence in so far as Condenser Service and Engineering Company was concerned. (Said judgment, in the absence of an appeal therefrom, has become final).

After the trial judge had heard the evidence introduced in support of Western's cross petition against Condenser Service and Engineering Company, he sustained the latter's demurrer thereto and entered judgment in its favor. It is from this judgment that Western has perfected the present appeal.

The material facts of the controversy are substantially as hereinafter related. After determining that the plant should be built, and obtaining an R. E. A. loan for that purpose, Western contracted with Laramore and Douglass, an engineering firm, to prepare plans and specifications, receive bids, let contracts for, and supervise, its construction. The E. E. Farrow Company was the successful bidder and was awarded the contract to construct the plant under supervision of Laramore and Douglass. Among the latter's supervisory duties, under its contract with Western, was the inspection by one or more resident engineers, approved by Western and R. E. A.'s Administrator, of all materials and equipment furnished for construction of the plant prior to their use therein. The contract which referred to Laramore and Douglass as the "Engineer", provided that it should assign certain persons named therein opposite their titles, to perform various duties indicated in the contract and that no changes in such assignments should be made "without the prior approval of the Owner and Administrator."

Among the materials and/or equipment to be installed as a part of the plant were the two condensers involved herein, which Western contracted with Condenser Service and Engineering Company (hereinafter referred to merely as the Condenser Company) to furnish. "Article III" of this latter contract, which referred to Western as "Owner" and to the Condenser Company as "Materialman", is as follows:

*"Article III—Defective Materials and Workmanship*

*"Section 1.* All Materials furnished hereunder shall be subject to the inspection, tests, and approval of the Owner's Engineer and the Administrator, and the Materialman shall furnish all information required concerning the nature or source of any Materials and provide adequate facilities for testing and inspecting the Materials at the Plant of the Materialman.

*"Section 2.* The Materials furnished hereunder shall become the property of the Owner when delivered at the point to which shipment is to be made, provided, however, that the Owner or the Administrator may reject any such Materials as do not comply with the specifications for Materials and warranties of the Materialman and manufacturers either before or after incorporation of such Materials into the Project; provided such rejection is made within one year of date of shipment of the Materials. Upon any such rejection, the Materialman shall replace the rejected Materials with Materials complying with the Specifications for Materials and warranties, f. o. b. cars at suitable railroad destination. The Owner shall return the rejected Materials f. o. b. cars at the same destination. No payment shall be made for such rejected Materials until they have been replaced to the satisfaction of the Owner's engineer by the Materialman.

*"Section 3.* Notwithstanding acceptance of any Materials by the Engineer of the Owner, or any certificate which may have been given, or payment which may have been made by the Owner, if any defective Materials shall be discovered within one (1) year after shipment of the Materials, or within the period for which such Materials are guaranteed, whichever is longer, the Materialman shall replace any such defective Materials as promptly as possible after notice in writing from the Owner, or in the event of failure by the Materialman so to do, the Owner may make such replacement and the cost and expense thereof shall be paid by and recoverable from the Materialman."

The condensers in question weighed 65 tons each, were shipped by railroad, and, when unloaded, were found to have had their necks cut off and their hot water boxes and heat wells detached. It was obvious that before the condensers could be competely installed, their necks had to be welded on and their hot water boxes and heat wells installed. After Condenser Company was notified of this and the main bodies of the condensers were placed in proper position, it sent to the plant site a representative, who, according to some of the evidence, made arrangements with the Farrow Company to install the water boxes and heat wells in the condensers but nothing· was done about any other work on them until Laramore and Douglass through one of their engineer-employees C. H. Nelson, and in order to prevent delay in completion of the installation, engaged the Farrow Company to put the condenser into shape as completed units, including among other things, the work of doing the necessary welding and some painting.

After payment of the Farrow Company's bill for this work was refused, the present action followed, with the results hereinbefore described.

■ A portion of Western's brief seeking reversal of the trial court's judgment sustaining Condenser Company's demurrer to its evidence, contains excerpts from the testimony of the witness C. H. Nelson, relating, among other things, certain details of the controversy not hereinbefore mentioned. Also, in this portion of said brief, it is represented that, based on certain of its conduct in the litigation, Condenser Company's sole defense to Western's cause of action was that Nelson was not one of the engineers named (as hereinbefore mentioned) in Western's contract with Laramore and Douglass. On the other hand, Condenser Company calls attention to the

fact that it objected to Nelson's testimony as incompetent on that ground, and to the more significant fact that, at its instance, said testimony was ordered stricken as inadmissible. Despite the fact that Western's counsel cite *other* evidence in support of their position that the trial court erred in sustaining the demurrer and relies on the sufficiency of the evidence to show this, under the rule that such a demurrer admits all the facts and reasonable inferences therefrom favorable to the party against whom the demurrer is directed and should be overruled if such facts and inferences reasonably tend to establish a cause of action in its favor, the Condenser Company's counsel say:

"With the testimony of C. H. Nelson being entirely eliminated, there is no evidence *presented* by counsel (for Western) in support of his position that the court erred in sustaining Condenser's demurrer to Western's evidence in support of its cross petition." (Emphasis ours).

The Condenser Company's only other argument is, in brief, that "Western had no right under the contract to act as it did" and no authority for employing the Farrow Company to do the aforementioned work on the condensers—therefore no right to compel Condenser Company to pay for said work.

We do not agree. It will be remembered that Western's hereinbefore quoted contract with Laramore and Douglass named the latter as the "Owner's Engineer" in the construction of the plant; and it was under its provisions that bids were received and the general, or "over-all", contract for the construction project was awarded to be performed under said Engineer's supervision.

We think said contract's purport is clear in fixing the responsibility of this engineering firm to accept or reject the condensers furnished under the Condenser Company's contract with Western, and as a preliminary thereto, to determine their condition and whether or not they were installable as received. Where a contract for the furnishing of materials to be used in the construc-

tion of an electric plant makes the engineer of the owner the supervisory agent, with power to reject any materials that do not comply with the specifications, and authorizes the engineer to approve or reject same, his action in regard thereto is determinative, and subject only to his acting in good faith in the premises. City of Lawton v. Sherman Machine & Iron Works, 182 Okl. 254, 77 P.2d 567; Lippert Bros. v. City of Atoka, D.C., 94 F.Supp. 630; State v. Commercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790. See also Woods v. Anchor Stone & Materials Co., 205 Okl. 34, 235 P.2d 273.

There is ample evidence cited in the record by Western's counsel, and before the trial court at the time he ruled on Condenser's demurrer, showing that Laramore and Douglass, Western's Engineer, found the condensers in question unsuitable for installation as shipped; and that they were, in fact, not installable, as received and before the work was done on them that said Engineer ordered the Farrow Company to do (for the cost of which, the trial court rendered judgment against Western). No claim is made that it was not the Condenser Company's duty, under its contract with Western, to deliver the condensers in completed units, ready for installation, and no satisfactory or substantial reason is herein shown why Western should have to pay the cost of putting them in installable condition. (There was an indication in part of the evidence that the railroad did not have cars that would transport the condensers without their necks being cut off, but it was not pleaded or proved that this relieved the Condenser Company from its obligation, under its contract with Western, to deliver them ready to install). There is ample evidence tending to show that Condenser Company had prompt notice that Western's Engineer had found the condensers not installable, as delivered. After this occurred, and Condenser Company failed to remedy the defects therein, it was a question of fact, under the evidence in this case, as to whether Western, through its engineer, acted reasonably, by way of mitigating its

damages, in having the Farrow company do this. In this connection, see Frick Co. v. Falk, 50 Kan. 644, 32 P. 360; Reininger v. Eldon Mfg. Co., 114 Cal.App.2d 240, 250 P.2d 4; Welleston on Sales, R.E.1948, Sec. 5998 and cases cited to text. See, also, Tit. 23 O.S.1951 § 35; Western Silo Co. v. Cousins, 76 Okl. 154, 184 P. 92; Plastic Products Corp. v. Filtrol Corp., D.C., 137 F.Supp. 401. Certainly there was evidence, which, when considered with the reasonable inferences to be drawn therefrom, and in the light most favorable to Western, would have supported an affirmative answer to this substantive question.

Under the authorities supra, the trial court erred in entering judgment sustaining Condenser Company's demurrer, as aforesaid. Said judgment is therefore reversed and the cause is remanded to said court with instructions to overrule said demurrer and proceed further with the trial of Western's cross-action against the Condenser Company.