Wm. S. BAILEY, Jr., Plaintiff In Error,

v.

J. T. MURDOCK, Defendant in Error.

No. 41134.

Supreme Court of Oklahoma.

Oct. 4, 1966.

Rehearing Denied Dec. 27, 1966.

Mosteller, Andrews, Mosburg & Bowen, George H. Bowen, Donald E. Pray, Tulsa, for plaintiff in error.

Milsten, Milsten & Morehead, Jacob L. Morehead, A. M. Widdows, Tulsa, for defendant in error.

JACKSON, Vice Chief Justice.

In the trial court, plaintiff William S. Bailey, Jr., sued the defendant, J. T. Mur-dock, for a judgment establishing a joint venture and for an accounting and division of any joint venture profits held by the defendant. Defendant pleaded, among others, the defenses of laches and estoppel. The following summary of the findings of fact by the trial court, which were supported by the evidence, sufficiently details the facts involved:

1. That in the month of August, 1936, plaintiff and defendant entered into an oral agreement, which was a joint venture between the parties, for the purchase of oil, gas and other mineral interests and fee lands in portions of Kingfisher County, Oklahoma. The agreement required the plaintiff to furnish his knowledge, experience, time and expenses in finding and purchasing oil and mineral interests and lands in fee lying within the designated area. Defendant was to furnish the money necessary to purchase the interests so found and acquired. Title to all property interests acquired was to be taken in the name of the defendant to be held by him for the benefit of the parties to the joint venture.

2. That certain mineral and real property interests were found by plaintiff and purchased and conveyed to defendant and that certain sales and conveyances thereof were made by defendant; that defendant now owns the properties so conveyed to him, less the interests conveyed or traded.

3. That plaintiff was not to share in any losses that might be sustained by the joint venture but that upon the defendant's recovery of all moneys invested by him in the joint venture, plaintiff would be entitled to receive one-half of the real property interests and any profits then remaining in the joint venture.

4. That defendant made accountings to plaintiff of their joint venture as of February 19, 1938, and May 8, 1939, and that defendant made no further accounting or accountings to plaintiff after that time.

5. That a test well for oil and gas was drilled by a major oil company on a portion of the property acquired by the joint venture which was completed as a dry hole on or about September 13, 1940.

6. That defendant did not sell or attempt to sell any of the property interests belonging to the joint venture after the dry hole was drilled.

7. That soon after the dry hole was drilled, defendant called plaintiff on the telephone and advised plaintiff that approximately $1200.00 of purchase price costs incurred in the acquisition of the joint venture properties remained unrecovered by defendant and that defendant asked plaintiff to pay one-half of such unrecovered costs in return for a conveyance by defendant to plaintiff of one-half of the remaining properties; that plaintiff refused this offer for the reason that it was not in the agreement for plaintiff to bear purchase price costs; that defendant then informed plaintiff that defendant would absorb the then existing deficiency of purchase price costs and that he would retain the remaining property interests as his own.

8. That plaintiff made no further request for an accounting by defendant until by letter on November 23, 1960; that on November 29, 1960, defendant replied by letter wherein he denied that plaintiff had any right or interest in the joint venture properties.

9. That in about the year 1960, the properties here involved began to increase in value for oil prospecting purposes and that because of this plaintiff believed the properties of the joint venture might have paid out or were close to the point of paying out; that this was the reason plaintiff had not asked defendant prior to November, 1960, for an accounting.

10. That plaintiff did not violate a fiduciary or other relationship of trust with defendant.

11. That defendant did not change his course of action or assume any liability or lose any property or suffer any detriment during the period from September, 1940, to November 23, 1960, because of any act of plaintiff or because plaintiff did not seek any accounting during that time.

It appears that the above summarized findings of fact were proposed by the plaintiff. However, having adopted them, the trial judge then entered judgment for defendant "because of laches and estoppel".

The general issue of fact before the trial court was the question of what was the precise agreement of the parties. It was agreed that there was a joint venture arrangement. Plaintiff produced evidence supporting his claim that under the agreement, he was to furnish only his time, experience and "know how", and that he was to share only in any profits that might arise after defendant had recovered his costs. He produced evidence to the effect that no termination date was agreed upon, but that the arrangement was to continue indefinitely until defendant had recovered his costs, at which time plaintiff would be entitled to a one-half interest in what was left. He took the view that as to him, the agreement was an executed contract, and that his right to an accounting did not accrue until about 1960, when, he alleged, defendant had recovered his costs.

Defendant's evidence was to the effect that the parties were to share equally in either profits or losses, and that the arrangement was to terminate after the completion of the test well which was drilled in 1940. His view was that at that time, the venture showed a loss, with plaintiff owing him about $600.00.

■ In the face of this direct conflict in the evidence, and after a careful examination of the record before us, we cannot say that the trial court's findings of fact, which determined all issues in plaintiff's favor, were clearly against the weight of the evidence.

On appeal to this court, plaintiff argues generally that in view of the findings of fact made by the trial court, the judgment for defendant "because of laches and estoppel" was erroneous. This argument must be sustained.

■ It is well settled that laches is not merely delay, but delay that works a disadvantage to another; May v. Archer, Okl., 302 P.2d 768; Cassidy v. Gould, 86 Okl. 217, 208 P. 780. The trial court's finding in paragraph 11 that defendant did not "change his course of action * * * or assume any liability or lose any property interest or suffer any detriment" clearly and explicitly negatives the defense of laches in this case.

■ With regard to estoppel, the defendant had pleaded in his answer that plaintiff's silence from 1940 to 1960 "lulled defendant into a sense of security, causing defendant to follow a course of action he would not otherwise have taken, to his detriment". The same findings referred to in our preceding paragraph clearly bar any claim of estoppel against plaintiff. As to the elements of equitable estoppel, see 19 Am.Jur. Estoppel, Sec. 42; Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876; Williams v. Jones, Okl., 324 P.2d 541.

Defendant argues, however, that under the rule stated in Prince v. Altizer, Okl., 393 P.2d 831, this court is not bound by the findings or reasoning of the trial court, and that the judgment must be sustained if, on "any rational theory", it is correct.

The defendant then suggests that, contrary to the trial court's conclusion of law adverse to him on the legal defense of limitations, plaintiff's cause of action was barred by the three year statute of limitations, 12 O.S.1961, § 95, citing Wolfe v. North, 182 Okl. 520, 78 P.2d 674; Swartz v. Dennis, 208 Okl. 334, 255 P.2d 923, and similar cases.

■■ However, as is made clear in both of the cited cases, the statute of limitations does not begin to run in such cases until "the completion of the joint venture" or the "termination thereof". Under the pleadings and the evidence and the findings of the trial court in this case, the joint venture was to terminate, and plaintiff's right to a division of profits was to accrue, only after defendant had fully recovered his costs. Plaintiff's petition alleged, and the evidence showed, that because of transactions by defendant in October, 1960, and February, 1963, the properties "have returned to defendant their original costs and more, and that defendant is now obligated to make a final accounting". This action was filed on September 19, 1963. We hold that plaintiff's cause of action was not barred by the statutes of limitation.

Defendant also argues that a fair appraisal of all the competent testimony and evidence supports the defendant's version of the terms of the joint venture agreement. Of course the trial court's findings were to the contrary, and, as heretofore noted, we cannot say that those findings are clearly against the weight of the evidence.

■ Defendant also suggests that, contrary to the court's finding in paragraph 10, plaintiff was guilty of violating the fiduciary relationship existing between them as joint venturers. Defendant says, in support of this argument, that "While discussing the investment with defendant, plaintiff purchased mineral interests for $10.00 an acre, where the Phillips Petroleum Company later drilled their test well, and later sold some of the minerals for $150.00 per acre", and that he "did not offer this purchase" to defendant. However, under the agreement, plaintiff was not obligated to "offer this purchase" to defendant. There was also evidence that the interests referred to were about a mile and a half from the area where plaintiff was to make purchases for the joint venture. The evidence further showed that under the agreement, plaintiff, who had been in the "oil and gas leasing and royalty business" for

over forty years, was not obligated to confine his business activities exclusively to the joint venture. We therefore hold that the evidence fully supports the trial court's finding that plaintiff was guilty of no breach of a fiduciary obligation.

 Defendant also complains that certain documentary evidence admitted by the court over his obligation was in fact inadmissible. He refers to "ledger sheets" of plaintiff on which plaintiff had recorded certain expenses in connection with some of the land involved. Also on these sheets were plaintiff's notations, in condensed form, of his version of the terms of the joint venture agreement. However, the plaintiff plainly informed the court at the time these records were offered that the notations were " * * * *my understanding* of the agreement" (Emphasis supplied). Plaintiff had already testified as to what his understanding of the agreement was, and we are convinced that the error, if any, was harmless, especially in view of the fact that this case was tried to the court and not to a jury. The same may be said of the testimony of plaintiff's witness, Mr. B.

 In the early case of Miller v. Barnett, 49 Okl. 508, 153 P. 641, this court held:

> "Where a trial court, as a part of the judgment, makes separate findings of fact, responsive to and within the issues, and such ultimate or controlling facts are insufficient to support the judgment, the decision is against the law, and the cause will be reversed."

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for plaintiff establishing the joint venture as alleged by plaintiff and found by the trial court, and for an accounting, and to take such further actions and grant such further relief as may be required under the circumstances.