James John "Jack" COOK d/b/a C & C Development Company, Appellee/Cross-Appellant, Plaintiff,

v.

OKLAHOMA BOARD OF PUBLIC AFFAIRS and Oklahoma Department of Wildlife Conservation, Appellants/Cross-Appellees, Defendants,

and

Poe & Associates of Kansas, Inc. and Robert C. Poe, Appellants/Cross-Appellees, Defendants.

Nos. 59824, 59850.

Supreme Court of Oklahoma.

March 31, 1987.

Michael C. Turpen, Atty. Gen., Neal Leader, Asst. Atty. Gen., Deputy Chief, Civ. Div., Lynn Barnett, Asst. Atty. Gen., Oklahoma City, for appellants/cross-appellees, defendants Oklahoma Bd. of Public Affairs and Oklahoma Dept. of Wildlife Conservation.

Hugh A. Baysinger, Messrs. Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellants/cross-appellees, defendants Poe & Associates of Kansas, Inc. and Robert C. Poe.

Robert H. Mitchell, Ernest J. Istook, Jr., Oklahoma City, for appellee/cross-appellant, plaintiff James John "Jack" Cook d/b/a C & C Development Co.

OPALA, Justice.

Eight issues are presented for decision: [1] Does the Oklahoma Board of Public Affairs and the Oklahoma Department of Wildlife Conservation [State] owe a duty to disclose a subsurface condition to bidders on a construction project when its contract contains a clause that expressly disallows additional payment or extensions of time for completion of work if the contractor fails to acquaint himself with all conditions relating to the work? [2] Are the parties absolutely bound by a contract provision that makes the engineer's determination of compliance with the contract specifications final and conclusive absent a showing of fraud or bad faith? [3] Is the State liable for the cost of corrective work for which its agent assumed the responsibility when he instructed the contractor to replace concrete manholes? [4] Is the contractor entitled to compensation—based on quantum meruit—for the extra work that he was required to do because of miscalculations in the plans? [5] Is the contractor entitled to prejudgment interest on his recovery against the State? [6] Did the trial court err in not awarding the contractor his lost profits and overhead expenses? [7] Is the prevailing party in an action for breach of contract due to miscalculations in the plans and specifications, which required corrective work, entitled to attorney's fees under 12 O.S. 1981 § 936? and [8] Did the agent of the State—who was found not to be liable for breach of contract—become liable for the tortious injury to the contractor because of his failure to disclose wet soil conditions?

We answer the first question in the negative because there was neither a finding that the facts were not discoverable by the investigation contemplated by the contract nor a finding of misrepresentation as to existing soil conditions. We also answer the sixth and eighth questions in the negative. Our answer to the second, third, fourth, fifth and seventh questions is in the affirmative.

**FACTS**

James John "Jack" Cook [Cook] was the general contractor hired by the Oklahoma Board of Public Affairs to do construction work on the renovation of the east half of the Byron Fish Hatchery for the Oklahoma Department of Wildlife Conservation in accordance with plans and specifications designed by the project engineers, Robert C.

Poe and Poe & Associates of Kansas, Inc. [Poe]. The renovation project included reworking existing ponds, building a concrete drain and harvest kettle structures, and installing new fill and drain lines. On May 29, 1979 Cook was declared the low bidder and on June 6, 1979 Cook entered into a written contract with the State to construct the project for the total sum of $526,224. The terms of the contact required Cook to perform the work in accordance with the engineer's plans and specifications and to complete the project within 180 days.

The majority of the work involved excavation, filling and moving dirt to fashion the appropriate ponds and areas to be used for a fish hatchery. Cook bid the work on a per-unit basis.

Cook attended neither of the two pre-bid conferences that were held. The evidence is uncontroverted that, at the time of both of these conferences, the subsurface water conditions were discussed. Cook testified that he made no attempt to investigate the subsurface conditions of the soil, as required by the contract, because he felt he should be able to rely upon the soil borings furnished by the State with the plans and specifications. Cook sent his son to inspect the site six days after the pre-bid conference. This inspection consisted merely of driving through the location in the company of the hatchery manager.

Other contractors who bid on the project testified that they were able to discover the "wet" soil condition.[1] Cook did not offer a single witness to testify that it was not possible to determine upon inspection that the soil was "wet."

Cook commenced work on the project on July 23, 1979. Soon thereafter he began complaining to the State and the engineer that the soil conditions were wet instead of dry and that he felt he was entitled to extra compensation for working with wet soil.

On February 15, 1980, after repeated warnings about his failure to comply with the plans and specifications and to perform the work in a timely manner, Cook was removed from the job in accordance with the terms of the contract. Thereafter, Cook's bonding company employed Dave Construction Company to complete the work. While Dave Construction Company was still working on the project, Cook commenced this action against the State and Poe. Cook alleged that he was required to perform extra work for which he should be compensated because [1] the State and Poe misrepresented the moisture content of the soil and failed to disclose the wet soil conditions, [2] the plans and specifications contained miscalculations and errors and [3] the State breached its contract with him—all of which caused him to incur extra costs. The cause was tried without a jury.

The district court found that the unexpected difficulties in Cook's performance of the contract were due to the State's failure to disclose the underground aquifer which was known to it. Further, the soil borings provided with the contract showed no evidence of moisture, and the trial court found that it is customary to show the soil's moisture content by borings. The lower court also found that it is the custom of the industry to advise a contractor of any serious problems that will be encountered in the work, if known. Poe was found to be the agent of a disclosed principal—the State—and hence was not liable for any damages *ex contractu*.[2] In addition to an award for the extra expense Cook incurred due to the wet soil conditions (removing wet dirt—$178,155 and constructing concrete mud slabs—$18,000), the district court also awarded compensation to Cook for [1] redoing a harvest kettle that was rejected by the engineer ($10,450), [2] laying pipes at a depth deeper than required by contract specifications ($11,000), [3] correcting manhole elevations ($2,003) and [4]

---

1. One contractor testified that he discovered the wet soil condition by merely looking at the site; another said that he observed the water in the bottom of existing lagoon cells; and a third contractor testified that the conditions were muddy so he used a hand auger to determine the source of the water and that he had also obtained a water map from another source.

2. *Underside v. Lathrop*, Okl., 645 P.2d 514, 516 [1982].

prejudgment interest.[3] The liquidated delay damages withheld by the State were awarded to Cook as well ($23,300). Cook's total recovery amounted to $242,908[4] with counsel fees of $45,000.

The State appealed from the judgment and Cook counter-appealed. Even though Poe was exonerated from liability[5] he deemed himself aggrieved by the judgment and brought a separate appeal.[6] All of these appeals stand consolidated here for our disposition by this opinion.

### INTRODUCTION

■■■ Construction of an unambiguous contract is a matter of law.[7] We are required to affirm the judgment of a court sitting without a jury in a common-law action if its judgment is supported by competent evidence and is not contrary to the law.[8] Where the district court, as part of its judgment, makes separate findings of fact that are responsive to and within issues but the ultimate or controlling facts found are insufficient to support the judgment, the decision is contrary to law and must be reversed.[9]

### I

### SUBSURFACE WATER PROBLEM

The district court found that Cook was entitled to recover for his additional costs "necessitated by the wet site conditions which Defendants failed to disclose and misrepresented." Breach of duty to disclose and misrepresentation were the basis

---

3. See footnote 61 *infra* and accompanying text.

4. In its third amended petition Cook enumerated 13 "causes of action" and sought damages in excess of $948,657. The trial court agreed with Cook as to 7 of the "claims" and awarded damages in the amount of $242,908. The judgment for Cook is more accurately characterized as one based on three separate claims—two for breach of contract and one for damages from contract-related misrepresentation—with multiple elements of damages: BREACH OF CONTRACT [I] Failure to furnish Cook with workable plans—(a) $11,000—labor and services to lay pipe at a depth of 12′ instead of the 30 inches shown in the plans due to miscalculations and (b) $2,003—labor and services to lower manholes and to correct pouring of concrete due to incorrect elevations in the plans. [II] $10,450—labor and services to tear out and to replace a harvest kettle because the engineer erroneously determined that the cement mix was deficient and not in compliance with the plans. CONTRACT–RELATED MISREPRESENTATION [I] Failure to disclose wet site conditions and misrepresentation of the moisture content of the soil—(a) $18,000—labor and services to construct concrete base ponds (mud slabs); (b) $178,155—labor and services to remove wet soil instead of dry soil; (c) $23,300—amount withheld for liquidated damages because of delay due to wet soil condition; and (d) 60–day extension of the contract to allow for the extra work caused by the water problems.

5. Neither the State nor Poe asserted any cross-claims one against another. The trial court's memorial of the order denying new trial motion specifically recites that its judgment does not include a resolution of any rights those parties defendant may have *inter sese.*

6. In its brief-in-chief Poe appears to argue that (1) he did not misrepresent or fail to disclose the condition of the soil at the construction site; (2) Cook was not entitled to recover for the costs to tear out and to reconstruct Kettle No. 5 because the cement that Cook used did not meet the specifications; (3) Cook failed to prove his damages for quantum meruit recovery and (4) the trial court failed to resolve all the material facts and the essential issues of law in the case, i.e. it did not address the issue raised in Cook's trial brief of whether the defendants acted in bad faith by failing to inform Cook of the wet site conditions. Poe's standing to appeal is unchallenged.

7. *Ollie v. Rainbolt,* Okl., 669 P.2d 275, 279 [1983].

If there is an ambiguity in a contract between a public entity and a private party—which cannot be resolved by the rules governing interpretation of contracts (10 O.S. 1981 §§ 151 et seq.)—the uncertainty is presumed to have been caused by the private party; thus, the ambiguous contract provision will be interpreted most strongly against the private party. 15 O.S. 1981 § 170. The terms of § 170 provide:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, *except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party.*" [Emphasis added.]

8. *Corbett v. Combined Communications Corp.,* Okl., 654 P.2d 616, 617 [1982].

9. *Miller v. Barnett,* 49 Okl. 508, 153 P. 641 [1915] and *Bailey v. Murdock,* Okl., 421 P.2d 639, 644 [1966].

of Cook's second, third, ninth and twelfth "causes of action" [10] and thus the major portion of his claim for damages.[11]

We begin our inquiry with a basic premise of contract law: "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered." [12] The contract concededly required the removal of all subsurface and ground water on the construction site.[13] Its provisions would seem to command the work which is the subject matter of this suit,[14] but Cook urges that he is entitled to damages because the State, which knew that the site conditions were wet, failed to disclose all of its information to him before bidding.

The project entailed the renovation of existing fish ponds. That fact alone, absent any specific site inspection provision, should have alerted a bidder to the possibility of wet conditions. Bidders on the project were admonished by the bid specifications to investigate and to determine soil conditions at the site.[15] They were con-

---

**10.** See footnote 4 *supra* where we noted that these were not "causes of action" but rather *multiple elements of damages* of a single contract-related misrepresentation claim.

**11.** The total damages awarded on this portion of Cook's claim were $219,455.

**12.** *United States v. Spearin,* 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 [1918]; *Bearden v. Smith,* Okl., 274 P.2d 1015, 1017 [1954] and *Jackson Materials Co. v. Grand River Dam Authority,* 197 Okl. 353, 170 P.2d 552, 558 [1946].

**13.** Sections 2A–6 and 2B–11 of the specifications stipulate:
"2A–6. REMOVAL OF WATER:
The Contractor shall provide and maintain adequate dewatering equipment to remove and dispose of all surface and ground water entering excavations, trenches, or other parts of the work. Each excavation shall be kept dry during subgrade preparation and continually thereafter until the structure to be built, or the pipe to be insalled [sic] therein is completed to the extent that no damage from hydrostatic pressure, flotation, or other cause will result.
All excavations for structures or trenches which extend down to or below static ground water elevations shall be dewatered by lowering and maintaining the ground water surface beneath such excavations a distance of not less than 12 inches below the bottom of the excavation.
Surface water shall be diverted or otherwise prevented from entering excavated areas or trenches to the greatest extent practicable without causing damage to the adjacent property. * * * " (Technical Specifications-Excavation and Trenching for Pipes, Manholes and Structures, page 2A–2.)
"2B–11 REMOVAL OF WATER:
The Contractor shall take all necessary action and provide and maintain adequate dewatering equipment to remove and dispose of all unwanted surface and ground water entering the work site." (Technical Specifications-Excavation and Trenching for Pipes, Manholes and Structures, page 2B–3.)

**14.** Cook's reliance on cases where the work was not anticipated by the contract is misplaced. *Oklahoma City v. Derr,* 109 Okl. 192, 235 P. 218 [1925]. In the *Derr* case, the contract did not contemplate the extra work caused by an accident that severed a water main.

**15.** The "Specifications for Improvements to Byron Fish Hatchery" prepared by Poe contain the following pertinent provisions:
"Attention is called of the bidders to the fact that they must examine the site of the work prior to the submission of bids. If desired, they will be shown over the site of the work by a representative of the Engineer, upon appointment." (INSTRUCTIONS TO BIDDERS, page 1B–1)
*"Examination of Site & Conditions*
Before submitting a proposal, bidders must carefully examine the drawings and specifications, visit the site of the work and fully inform themselves as to all existing conditions and limitations. They shall include in the proposal, a sum to cover the cost of all items contemplated by the contract." (GENERAL PROVISIONS, page GP–2)
"2.01. EXAMINATION OF SITE OF WORK: It is the obligation of the bidder to examine carefully the site of the proposed work; to ascertain for himself all the facts concerning conditions therein, including all physical characteristics above, on and below the surface of the ground; to investigate the subsurface conditions and to determine for his information the character and proportionate quantities of soils, rock and other subsurface material which may be encountered in the work; to inform himself by independent research of the difficulties to be encountered and judge for himself the accessibility of the work and all other circumstances affecting the cost of doing the work or the time required for its completion; and the bidder agrees to this obligation in signing the proposal. The Owner assumes no responsibility whatsoever with respect to ascertaining for the bidder such facts covering physical characteristics at the site of the work. The bidder agrees that, if

fronted with not only a boilerplate inspection provision in printed form, but also with an invitation to attend two pre-bid conferences where the wet site conditions were discussed.

## A. CUSTOM OF THE INDUSTRY ARGUMENT

■ Cook urged below that, despite certain contract disclaimers, the State had an absolute duty to disclose in the contract plans and specifications its knowledge of any difficulties to be encountered.[16] The district court agreed, finding that "it is customary in such industry to advise a contractor of any serious problems which will be encountered in the work, if known." Where a contract is complete in itself and is unambiguous, the contract's language is the only legitimate evidence of the parties' intent.[17] The trial court must first make the requisite finding of ambiguity before it can look at the custom of the industry to determine the parties' obligations.[18] Even though the result may be harsh, a party will be bound by the unambiguous terms of a contract.[19]

■ Although the contract documents themselves did not furnish Cook with all the information the State possessed, he cannot maintain an actionable claim for concealment against a public hirer of a contractor unless either one of two tests is met: [1] there is a finding of misrepresentation [20] or [2] the facts allegedly withheld are not discoverable through the investigation contemplated by the contract.[21]

## B. MISREPRESENTATION AS TO EXISTING SOIL CONDITIONS

■ A contract clause which requires a contractor to rely upon its own inspection does not control when there is a finding of misrepresentation as to existing conditions.[22] The district court's finding of misrepresentation was based upon the 50 soil borings included in the contract plans and specifications. The court found that the extra work was caused by Cook's "detrimental reliance upon test borings which Defendants submitted and did not indicate the actual moisture conditions." [23]

This court faced the problem of misrepresentation in construction contracts in the

awarded the contract, he will make no claim for, and will have no right to, additional payment or extension of time for completion of the work or any other concession because of any failure on his part to fully acquaint himself with all conditions relating to the work. The bidder shall rely exclusively upon his own estimate, investigation and evaluation of site conditions." (Supplemental General Provisions, Proposed Requirements and Conditions, page SGP–2–1.)

16. The State and Poe had access to a report (Layne-Western Report) that was commissioned in 1972 to determine the water supply for the fish hatchery. Although the report is not specifically mentioned in the journal entry of judgment, the district court doubtless considered it in the fact-finding process.

17. *Ollie v. Rainbolt, supra* note 7 at 279.

18. *Jackson Materials Co. v. Grand River Dam Authority, supra* note 12, 170 P.2d at 557.

19. *Board of Regents of Oklahoma Colleges v. Walter Nashert and Sons, Inc.,* Okl., 456 P.2d 524 [1969].

20. *Maney v. Oklahoma City,* 150 Okl. 77, 300 P. 642 [1931]; *Robert E. McKee, Inc. v. City of Atlanta, infra* note 28; *Eastern Tunneling Corpo-*

*ration v. Southgate Sanitation District, Arapahoe County, Colorado,* 487 F.Supp. 109 [D.Colo. 1980]; *Savin Bros., Inc. v. State,* 62 A.D.2d 511, 405 N.Y.S.2d 516 [1978]; *Jasper Construction, Inc. v. Foothill Junior College District of Santa Clara County,* 91 Cal.App.3d 1, 153 Cal.Rptr. 767 [1979]; *Anderson v. Golden,* 569 F.Supp. 122 [S.D.Ga.1982] and *Ambrose-Augusterfer Corporation v. United States,* 184 Ct.Cl. 18, 394 F.2d 536 [1968].

21. *Ambrose-Augusterfer Corporation v. United States, supra* note 20, 394 F.2d at 546; *Hunt & Willett, Inc. v. United States,* 168 Ct.Cl. 256, 351 F.2d 980 [1964]; *Wiechman Engineers v. State ex rel. Department of Public Works,* 107 Cal. Rptr. 529, 31 Cal.App.3d 741 [1973]; *B–E–C–K Constructors v. State, Dept. of Hwys.,* 604 P.2d 578 [Alaska 1979] and *Schmelig Constr. Co. v. Mo. State Highway Com'n,* 543 S.W.2d 265 [Mo. App.1976].

22. *Maney v. Oklahoma City, supra* note 20.

23. Other courts have held that soil borings themselves are but indications by which parties make inferences and thus cannot be the basis for a finding of misrepresentation. *L.F. McNulty, Inc. v. Village of Newport,* 290 Minn. 117, 187 N.W.2d 616, 619 [1971]. We need not decide this issue in order to reach a result in this case.

1931 case of *Maney v. Oklahoma City*.[24] In *Maney* a positive representation was made by the City that no rock was to be encountered except in negligible quantities. The defendant City was held responsible for the costs of the extra work caused by excavating the rock as "the undisputed proof showed that the bidders did not have sufficient time to make their own borings."[25] The teaching in *Maney* suggests that, when the bidder is allowed insufficient time to make a personal study, the state cannot invoke exculpatory clauses to exonerate itself from liability.[26]

■ Other jurisdictions have applied a variety of tests to a contractor's claim of misrepresentation in the public contract.[27] We adopt here the two-prong test of *Robert E. McKee, Inc. v. City of Atlanta*[28] which logically follows existing Oklahoma law. This test requires that either of two conditions must be present in a claim for recovery based on misrepresentation in a public construction contract[29]—(a) the bidder could not have discovered the correct facts about the conditions through reasonable investigation prior to the contract or (b) the underlying data actually provided to the bidder was inaccurate.

■ *Cook was reasonably able to discover the true facts for himself.*

■ The key term in this part of the test is *"reasonableness."* This does not require each contractor to hire expert analysts[30] or to conduct other "tremendously" expensive tests.[31] If every bidder were required to make his own complete investigation of every detail although the chances of receiving the bid were remote, the number of bids would decrease and the dollar amount of the bids would increase.[32] By the same token, a government does not become an insurer merely by providing some information.[33] Courts have required contractors to make soil borings,[34] to con-

**24.** *Maney v. Oklahoma City, supra* note 20.

**25.** *Maney v. Oklahoma City, supra* note 20, 300 P. at 648.

**26.** *See also, Christie v. United States,* 237 U.S. 234, 240, 35 S.Ct. 565, 567, 59 L.Ed. 933 [1915] (The Court noted that the "[c]laimants were forced to rely wholly upon the information furnished them, time not being sufficient to permit them to make their own borings...."); *Alpert v. Commonwealth,* 357 Mass. 306, 258 N.E.2d 755, 764 [1970] (The court stated that the twenty-one day bid period precluded the contractor from making adequate soil analysis and test borings.); *Peter Salvucci & Sons, Inc. v. State,* 110 N.H. 136, 268 A.2d 899 [N.H.1970], *reaffirmed,* 111 N.H. 259, 281 A.2d 164 (the bidder was allowed insufficient time to make a personal study).

**27.** *Compare Valentini v. City of Adrian,* 347 Mich. 530, 79 N.W.2d 885 [1956] (the court permitted recovery on a theory of breach of warranty based upon the contracting agency's failure to reveal to the bidders its full knowledge of the subsoil conditions) with *Robert E. McKee, Inc. v. City of Atlanta, infra* note 28, (a finding of misrepresentation will be made if bidder could not reasonably discover the true facts for himself) *and Thorn Constr. Co., Inc. v. Utah Dept. of Transp.,* 598 P.2d 365 [Utah 1979] (contractor justifiably relied on oral statement of Department engineer's aide made during inspection).

**28.** 414 F.Supp. 957 [N.D.Ga.1976]. *Accord, Anderson v. Golden, supra* note 20; *Eastern*

*Tunneling Corporation v. Southgate Sanitation District, Arapahoe County, Colorado, supra* note 20 and *Al Johnson Constr. Co. v. Missouri Pac. R. Co.,* 426 F.Supp. 639 [E.D.Ark.1976].

**29.** The cause of action remains as one in contract. The doctrine of sovereign immunity then in force precluded a tort claim against these governmental agencies. See *Vanderpool v. State,* Okl., 672 P.2d 1153 [1983].

**30.** *Woodcrest Construction Company v. United States,* 187 Ct.Cl. 247, 408 F.2d 406, 410 [1969], *cert. denied,* 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 [1970].

**31.** *Jacksonville Port Authority v. Parkhill-Goodloe Co., Inc.,* 362 So.2d 1009, 1013 [Fla.App. 1978].

**32.** *Robert E. McKee, Inc. v. City of Atlanta, supra* note 28 at 959.

**33.** *Eastern Tunneling Corporation v. Southgate Sanitation District, Arapahoe County, Colorado, supra* note 20 at 115.

**34.** See, *Berkel & Co. Contractors v. Providence Hosp.,* 454 So.2d 496, 504–505 [Ala.1984]. There, the court said, "... Berkel is quite right in pointing to the economic inefficiency which would result from requiring the contractors to conduct separate soils tests when logically the owner is in the best position to provide the information.... Despite these economic policy objections, Alabama law firmly embraces the concept of freedom of contract."

duct on-site investigations,[35] and to check available records.[36] The length of time the contractor has available to make his own investigation is an important factor in these cases.[37] In the case at bar Cook had a four-to-five-month period to inspect the site before he submitted his bid.

■ Cases cited by Cook in support of his argument that a proper investigation is irrelevant to the State's duty to disclose are unpersuasive.[38] Reliance is a necessary element of a misrepresentation claim.[39] The contractor in this case was not forced to rely upon the soil borings furnished him because there was sufficient time for him to make his own investigation.[40] The burden of proof cast on Cook the duty to prove whether he could have discovered the correct facts about the subsoil through a reasonable investigation prior to the contract.[41] Cook failed to produce a single witness to testify that the "wet soil" condition was not detectable upon inspection. All other bidders who testified in the case were able to determine by means of a reasonable inspection that the soil was wet.[42]

*Cook assumed the risk of his own conclusions drawn from information provided by the State which accurately represented the results of an investigation of subsoil conditions.*

■ The second prong of the test in *McKee* is based on the materiality of the misrepresentation itself. Recovery cannot be allowed to a contractor when his misjudgment is based on information that itself is accurate. Cook assumed the risk of any deviation in the conditions from those indicated by samples when the information he relied upon was accurate. The district court found that the soil borings did not indicate the *actual moisture conditions*. There was no finding that the soil borings inaccurately represented the results of the State's investigation of the subsoil conditions.

## C. THE FACTS ALLEGEDLY WITHHELD WERE DISCOVERABLE THROUGH THE INVESTIGATION CONTEMPLATED BY THE CONTRACT

■ Under this contract, the State had no obligation to volunteer facts that could have been reasonably discovered through Cook's own investigation of the site as contemplated by the contract documents.[43]

**35.** *Ambrose-Augusterfer Corporation v. United States, supra* note 20, 394 F.2d at 546; *Morrison-Knudson Company, Inc. v. State,* 519 P.2d 834, 842 [Alaska 1974] and *B–E–C–K Constructors v. State, Dept. of Hwys., supra* note 21 at 585.

**36.** *Ross Engineering Company v. United States,* 130 Ct.Cl. 368, 127 F.Supp. 580 [1955].

**37.** See footnote 26 *supra.*

**38.** In *Public Constructors, Inc. v. State,* 55 A.D.2d 368, 390 N.Y.S.2d 481 [1977], the court held that an "inspection by the contractor would not reveal the representations to be false." *Robert E. Lee & Co. v. Commission of Public Works,* 248 S.C. 84, 149 S.E.2d 55 [1966] (Defendant made a positive representation that the subsoil conditions encountered in the test borings were as shown on the plans when the defendant did not accurately disclose that information.); *Warner Construction Corp. v. City of Los Angeles,* 2 Cal.3d 285, 85 Cal.Rptr. 444, 466 P.2d 996 [1970] (The court noted that "[t]he facts concealed were exclusively available to the defendant.")

**39.** *Maney v. Oklahoma City, supra* note 20, 300 P. at 648.

**40.** Compare the four to five months Cook had available to make an investigation with the twenty-one days available to the bidder in *Alpert v. Commonwealth, supra* note 26 at 764.

**41.** *Eastern Tunneling Corporation v. Southgate Sanitation District, Arapahoe County, Colorado, supra* note 20 at 115.

**42.** This is not a case in which the contractor sought the information possessed by the State and the information was withheld. Two pre-bid conferences were held, neither attended by Cook, although he admittedly had notice of them. The subsurface water was discussed at the conferences with the representatives of the other potential bidders. Cook made no inquiries of defendants' personnel. The absence of a request for information distinguishes this case from *Walla Walla Port District v. Palmberg,* 280 F.2d 237 [9th Cir.1960] and *Warner Construction Corp. v. City of Los Angeles, supra* note 38, cited and relied upon by Cook.

**43.** *Schmelig Constr. Co. Inc. v. Mo. State Highway Com'n, supra* note 21 at 269; *Ambrose-Augusterfer Corporation v. United States, supra*

A claim of misrepresentation cannot be sustained if the allegedly concealed condition could have been discovered through investigation.[44]

■ In the specifications, the "examination-of-the-site-and-conditions" paragraph imposes the duty on the contractor to evaluate the site conditions.[45] The State had the right to presume that Cook would investigate the critical location as he had contracted to do.[46] When an inspection clause is contained in a contract, a contractor may not "rest content" with the materials physically furnished him.[47] Cook's testimony was that he felt he could rely on the soil borings and he made no attempt to determine for himself the subsurface conditions prior to commencing the work.

An affirmance of the district court's finding on this issue would clearly contravene the concept of freedom of contract. The State is legally entitled to exoneration from liability for the soil report and to compel that the contractor rely upon his own investigation.[48] Therefore, we must reverse the district court's award of damages on Cook's second, third, ninth and twelfth "causes of action."

## II

### HARVEST KETTLE NO. 5

The contract between the State and Cook provided that Poe would review the work to determine if it complied with the plans and specifications. Cook was required to obtain an approved design mix of concrete before pouring it into any proposed concrete structure.[49] The structure in controversy, Harvest Kettle No. 5,[50] was poured before the requisite approval was obtained. Poe required Cook to remove and to reconstruct the kettle because the concrete mix used was not in compliance with the specifications for proper air entrainment (air bubbles), a factor considered essential to the

---

note 20, 394 F.2d at 547; *Hunt & Willett, Inc. v. United States, supra* note 21 and *B–E–C–K Constructors v. State, Dept. of Hwys., supra* note 21 at 585.

**44.** In *Morrison-Knudson Company, Inc. v. State, supra* note 35 at 841, the court said: "Where resort to the state is the only reasonable avenue for acquiring the information, the state must disclose it, and may not claim as a defense either the contractor's failure to make an independent request or exculpatory language in the contract documents."

**45.** For the text of this paragraph see footnote 15 *supra.*

**46.** *Ross Engineering Company v. United States, supra* note 36, 127 F.Supp. at 584.

**47.** *Hunt & Willett, Inc. v. United States, supra* note 21; *Flippen Materials Company v. United States,* 160 Ct.Cl. 357, 312 F.2d 408, 414 [1963]; See, *Board of Regents of Oklahoma Colleges v. Walter Nashert and Sons, Inc., supra* note 19 at 526.

**48.** *Berkel & Co. Contractors v. Providence Hosp., supra* note 34.

**49.** The specifications require Poe's approval as to the quality and acceptability of materials furnished and the work performed. They specifically require prior approval of the source and quality of concrete materials before any concrete is placed.

Sections 3.01 and 3A–3 of the specifications stipulate:
"3.01. AUTHORITY OF THE ENGINEER:
All work shall be done under the supervision of the Engineer and to his satisfaction. He shall decide all questions which arise as to the quality and acceptability of materials furnished, work performed, manner of performance, rate of progress of the work, sequence of construction, interpretation of the plans and specifications, acceptable fulfillment of the contract, compensation, mutual rights between contractors under these specifications and suspension of work. He shall determine the amount and quality of work performed and materials furnished and his decisions and estimates shall be final. His estimate, in such event, shall be a condition precedent to the right of the Contractor to receive money due him under the contract." (Supplemental General Provisions—Control of the Work and Materials, page SGP–3–1.)
"3A–3. PRELIMINARY APPROVAL:
The Engineer's approval of the source and quality of concrete materials and of the concrete proportions proposed for the work shall be obtained before any concrete is placed. The trial mix shall be approved prior to placing of concrete." (Technical Specifications-Concrete, page 3A–2.)

**50.** Harvest kettles are large concrete structures used for harvesting fish when the ponds are drained. The engineer did not approve the concrete design mix for Kettles Nos. 4 and 5. Only the cost of removing and reconstructing Kettle No. 5 is in controversy here.

successful duration of freeze and thaw conditions.

The trial court found that, although Kettle No. 5 did not meet the contract specifications, it "was comparable or exceeded the requirements of the specifications" and that Cook "substantially complied" with the contract. Cook was awarded the entire balance he claimed which included the cost of building, tearing out and replacing the kettle.

The State asserts that both the *quality* and *durability* of the concrete were crucial to the proper construction of the kettle. While Cook's concrete mix may have exceeded specifications for *compressive strength*, it did not show compliance with specifications designed to provide the *durability* of the concrete nor did it extinguish Poe's contractual right to disapprove an unacceptable design mix.

 Oklahoma follows the rule that, where parties to a construction contract designate a person—such as an architect or project engineer—to determine questions about its execution, the parties are bound by such determination except in the case of fraud or gross mistake on the part of the engineer as would necessarily imply bad faith or a failure on his part to exercise honest judgment.[51]

 A judicial finding of bad faith or fraud was the *sine qua non* of Cook's recovery on this cause of action. The court's finding that the kettle "substantially complied" with contract specifications lacks competent evidence to support the judgment. Thus, the decision on this issue is contrary to law and must be reversed.[52]

Even though there may be a reasonable basis for the engineer's action, it is not our function to make an initial determination of fact questions that were properly present-ed to the trial court but were not determined by it.[53] Thus, we must remand the case for consideration of this issue.

## III

### THE STATE'S LIABILITY FOR EXTRA WORK ORDERED BY POE

 Cook originally built the concrete manholes in a manner consistent with the elevations set forth in the specifications and only then determined that they were too high. Poe's project manager advised Cook to lower the manholes and also told him that Poe would be responsible for the cost of the corrective work. As a general rule, the master is liable for the acts of its servants.[54] The damages award for the two manholes was $2,003. This figure also included an amount for removing a retaining wall.

The State cannot escape liability for corrective work ordered by Poe. The contract specifications stipulate:

"3.03 COORDINATION OF PLANS, SPECIFICATIONS AND SPECIAL PROVISIONS:

\* \* \* \* \* \*

In the event the contractor discovers any apparent error or discrepancy (in the plans and specifications), he shall immediately call such error or discrepancy to the attention of the engineer for his interpretation and decision, and such decision shall be final." Supplemental General Provisions, Control of the Work and Materials, page SGP–3–1.)

Although the contract's general provisions state that extra work requires a change order, the district court could properly interpret the quoted section of § 3.03 to mean that the extra work done on the

**51.** *National Surety Co. v. Board of Education of City of Hugo,* 62 Okl. 259, 162 P. 1108 [1917]; *City of Lawton v. Sherman Machine & Iron Works,* 182 Okl. 254, 77 P.2d 567 [1938]; *Western Farmers Electric Coop. v. Condenser Service & Engineering Co.,* Okl., 333 P.2d 960, 963 [1959] and *Antrim Lumber Co. v. Bowline,* Okl., 460 P.2d 914, 920 [1969].

**52.** See cases cited in footnote 9 *supra.*

**53.** *Erwin v. Harris,* Okl., 371 P.2d 902, 904 [1962].

**54.** *Mid-Continent Pipeline Co. v. Caruthers,* Okl., 267 P.2d 568 [1954].

manholes at the direction of the engineer because of mistakes in the contract did not require additional approval by the State.[55] The award of $2,003 was hence proper.

### IV

### COMPENSATION AWARDED BECAUSE OF SUBSTANTIAL MISCALCULATIONS IN THE PLANS: PIPES AND MANHOLES

The district court found that substantial miscalculations in the plans and specifications had been made as to the depth at which certain pipe was to be installed and as to the height of certain manholes. There is competent evidence in the record to support this finding. The contract provided that the contractor must obtain a change order for payment of any extra work. Cook requested change orders and completed the work under protest.

The contract did not contemplate laying the pipe deeper than 30" except in isolated circumstances.[56] As the specifications made it necessary for 38 percent of the pipe to be laid deeper than 30", the law will imply a promise to pay for these extra services.[57] The fault of the plans should not prevent Cook from recovering for labor and services done.[58] When extra work is required because of miscalculations in the plans, the damages are measured by the reasonable value of the additional work and materials furnished.[59]

Essentially the only evidence of the losses incurred by Cook for this work was the testimony of Cook and his son. Without objection they testified as to the rental value of the equipment and to Cook's labor costs. The defendants now assert that Cook's figures are too high. They did not seek to refute them at trial through expert testimony, or otherwise, although they had experts testify as to the reasonable value of working with wet, as opposed to dry, dirt and as to the reasonable value of attorney's services. While we acknowledge that the amount of Cook's claimed damages was not shown with absolute scientific precision, we note that quantum meruit does not require mathematical exactness.[60]

---

55. Under the contract's "change-order" provisions the State is the final arbiter of work changes. The pertinent contract terms stipulate:

"Change Orders to the Contract:
(a) All proposals for changes in work shall be submitted by the Contractor in a lump sum amount to the Engineer. * * *
(b) In considering proposals for change involving added work, omitted work, or any combination thereof, *check of estimates in detail will be made by the State's Representative,* utilizing unit prices where specified or agreed upon, with the view of arrival at equitable adjustment.
(c) When necessity to proceed with a change does not allow sufficient time to properly check a proposal, or because of failure to reach an agreement, *the State may order the Contractor to proceed* on the basis of price to be determined at the earliest practicable date, but not to be more than the increase or less than the decrease proposed. * * *" [Emphasis added.]
(General Provisions, Standard Requirements for Contract Work, Contract Changes, page GP–3.)
While the State does not dispute that Cook is entitled to reimbursement for replacing the concrete manhole covers, it seeks to shift the expense to Poe. Poe's liability to the State for the corrective work on the manholes presents here an issue that was left unsettled by the trial court's judgment, and we may not reach it in this pronouncement. See footnote 5 *supra* and *Erwin v. Harris, supra* note 53 at 904.

56. Section 13–1 (Special Provisions-Pipe Burial) of the specifications stipulates:

"13.1 *Water Lines:*
All water line shall have a minimum 30" of cover. It is not anticipated that this depth should be exceeded except in isolated instances where specifics of construction require a deviation. Water line installation price should be based on this provision." (page SP–4)

57. *Anderson v. Golden, supra* note 20.

58. *Savin Bros., Inc. v. State, supra* note 20.

59. *Savin Bros., Inc. v. State, supra* note 20, and *Maney v. Oklahoma City, supra* note 20.

60. See e.g., *Shannon v. Shaffer Oil & Refining Co.,* 51 F.2d 878, 881–882 [10th Cir.1931]; *George v. Greer,* 207 Okl. 494, 250 P.2d 858, 860 [1952] and *Welling v. American Roofing & Sheet Metal Company, Inc.,* Okl., 617 P.2d 206, 210 [1980].

## V

### COMPENSATION NOT AWARDED TO COOK BY THE TRIAL COURT—PREJUDGMENT INTEREST, LOST PROFITS AND OVERHEAD EXPENSES

#### A. PREJUDGMENT INTEREST

Cook contends that he was entitled to prejudgment interest and that its exclusion from recovery was a judicial oversight.[61] The State and Poe argue that Cook, as a matter of law, is not entitled to any prejudgment interest.

The applicable statute, 23 O.S. 1981 § 6, provides in pertinent part:

"Any person who is entitled to recover *damages certain, or capable of being made certain by calculation,* and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day...." [Emphasis supplied.]

As a general rule, prejudgment interest will not be allowed unless the amount recovered was capable of ascertainment before judgment through calculation by using well-established market values.[62]

Cook was required to do extra work on the fish hatchery because of miscalculations in the plans and specifications. He had to lay pipe at a greater depth than called for by the plans and he had to do corrective work on concrete manholes. These items have a value in the marketplace which can be arrived at in advance of performance by computation of the costs of material, labor and other well-known elements of cost. We hold that Cook was hence entitled to prejudgment interest on these elements of recovery.

#### B. LOST PROFITS AND OVERHEAD EXPENSES

Loss of anticipated profits, if within the contemplation of the parties at the time contract was entered into, is recoverable in an action for breach of contract. These damages must flow proximately from the breach and be capable of accurate measurement.[63] As the contract provides for a change order before any extra work is done, this was not an award based on express contract but on quantum meruit. Lost profits in such a case will not be awarded where the contractor presented neither evidence of its profits for preceding years nor an expert analysis with a breakdown of damages.[64] The district court's finding that Cook was not entitled to recover lost profits or overhead expenses must be upheld if supported by any competent evidence.[65] Accordingly, we affirm the judgment of the district court on this issue.

## VI

### ATTORNEY'S FEES

The State asserts that, because this action sounds in tort, it is not one within the contemplation of 12 O.S. 1981 § 936. The cited statute provides:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or *for labor or services,* unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." [Emphasis supplied.]

**61.** From the four corners of the journal entry we construe the judgment as including prejudgment interest. Paragraph 19 clearly entitled Cook to that recovery.

**62.** *City of Tulsa v. Copp,* 127 Okl. 128, 260 P. 16, 19–20 [1927] and *Sandpiper North Apartments v. American National Bank and Trust Company of Shawnee,* Okl., 680 P.2d 983, 993 [1984].

**63.** *Morgan v. Underwood,* Okl., 292 P.2d 1001, 1002 [1956].

**64.** *Warner Construction Corp. v. City of Los Angeles, supra* note 38, 466 P.2d at 1007.

**65.** *Corbett v. Combined Communications Corp., supra* note 8; *United Engines, Inc. v. McConnell Constr., Inc.,* Okl., 641 P.2d 1101 [1981] and *Pracht v. Oklahoma State Bank,* Okl., 592 P.2d 976 [1979].

Before counsel fees may be awarded the case must be one that falls clearly within the express language of the authorizing statute.[66] The underlying nature of the action determines the applicability of the § 936 labor-and-services provision.[67] If the damage arises directly from the rendition of labor or services rather than from an aspect that relates collaterally to labor and services, the provisions of § 936 are applicable.[68]

That portion of the judgment which we uphold today—in the amounts of $11,000 and $2,003—clearly represents an award for labor and services rendered by Cook for the extra work he was required to perform because of the State's breach of contract-based duty to provide him with workable plans. Cook was entitled to an attorney's fee on this claim for trial-related services.

Because we are not affirming the remainder of the trial court's judgment for Cook, we must set aside the attorney's fee award without prejudice to its reassessment and reexamination on remand. Upon final termination of the proceedings below, the trial judge shall re-evaluate the aggregate amount of legal services rendered below and determine how much Cook should be allowed for those trial-related services.

Whenever there is statutory authority to award counsel fees in the trial court, additional fees may also be allowed for services rendered in the appellate court.[69] Cook makes a plea for appeal-related counsel fees in his brief. While Cook is not defeated on all the issues he presses on appeal, the State is the prevailing party upon more issues than Cook. We must hence deny Cook's plea for appeal-related counsel fees. The State seeks no attorney's fees either for services rendered in the trial court or for those on appeal and we must hence leave that issue unaddressed.

## VII

### LIABILITY OF THE STATE'S ENGINEER [POE] FOR THE UNDISCLOSED SITE CONDITIONS

The district court found that Poe was acting as an agent for a disclosed principal—the State—and thus was not liable for damages *ex contractu*.[70] There is competent evidence in the record to support this finding.[71] Cook does not contest it; rather, he asserts that Poe's negligence in preparing the plans and specifications gives Cook a cause of action in tort. In *Keel v. Titan Construction Corporation*[72] we held that accompanying every contract is a common-law duty to perform the task agreed to be done with care, skill, reasonable experience and faithfulness. A negligent failure to observe any of these conditions may constitute a tort as well as a breach of contract.[73] In *Keel* we characterized an architect's defective design as a "negligent breach of a contract" for which imposable liability is "not necessarily dependent upon a pre-existing privity in legal

---

**66.** *Moses v. Hoebel,* Okl., 646 P.2d 601, 603 [1982] and *Ferrell Construction Company, Inc. v. Russell Creek Coal Company,* Okl., 645 P.2d 1005, 1011 [1982].

**67.** *Russell v. Flanagan,* Okl., 544 P.2d 510, 512 [1975] and *Burrows Construction Company v. Independent School District No. 2 of Stephens County, Oklahoma,* Okl., 704 P.2d 1136, 1138 [1985].

**68.** See cases cited in footnote 67 *supra.*

**69.** *Sisney v. Smalley,* Okl., 690 P.2d 1048, 1051 [1984] and *Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 728 [1986].

**70.** *Underside v. Lathrop, supra* note 2.

**71.** Section 6.23 (Legal Relations and Responsibility to the Public-Supplemental General Provisions) of the specifications stipulates:
"6.23 PERSONAL LIABILITY OF OFFICIALS:
In carrying out the provisions of this contract or in exercising any power or authority granted them by their position, there shall be no liability upon the officials of the Owner, the Engineer, or their authorized representatives or assistants, either personally or as officials of the Owner, it being understood that in such matters they act as agents and representatives of the Owner." (page SGP-6-8)

**72.** Okl., 639 P.2d 1228 [1982].

**73.** *Keel v. Titan Construction Corporation, supra* note 72 at 1232.

relationship between the person injured and the person causing the injury."[74]

In Part I of the opinion we held that the State had no duty to disclose the wet site conditions. Even assuming that Poe was negligent in preparing the information it furnished to the bidders, that would not be sufficient to satisfy Cook's burden as the injury complained of must have been reasonably foreseeable to the tortfeasor.[75] The soil borings were prepared by the State and not by Poe. Cook was invited by the plans and specifications to make inquiries of Poe but failed to do so. Poe's representatives discussed the subsurface water with all who attended the pre-bid conferences. The water conditions were observed by all bidders who conducted a thorough investigation of the site as required by the contract documents. Poe had the same right as the State to anticipate that the contractor would conduct the required investigation.[76] The district court's decision on this issue must be affirmed.

The trial court's judgment is affirmed in part and reversed in part and the cause is remanded for further proceedings not inconsistent with our pronouncement.

HARGRAVE, V.C.J., and HODGES, LAVENDER and WILSON, JJ., concur.

SUMMERS, J., concurs in result.

SIMMS, Justice, concurring in part and dissenting in part:

I dissent only to awarding Cook prejudgment interest and attorney's fees.

KAUGER, J., disqualified.

---

**74.** *Keel v. Titan Construction Corporation, supra* note 72 at 1232.

**75.** *Keel v. Titan Construction Corporation, supra* note 72 at 1231.

**76.** *Ross Engineering Company v. United States, supra* note 36, 127 F.Supp. at 584.